THE STATE ex rel. ST. LOUIS COUNTY and
JOHN WIETHAUPT et al., Judges, v.
JOHN P. GORDON, State Auditor.

**In Banc, October 23, 1916.***

1. **COUNTY BOND ROAD LAW: Title.** The title to the Act of
1907, Laws 1907, p. 411, which was, "An act to authorize county
courts, upon the assent of the voters of the county, to issue bonds
for the grading, constructing, paving and maintaining of paved,
gravelled, macadamized or rock roads and necessary bridges
and culverts therein," refers only to the manner of getting the
money, not to the manner of expending it; and does not embrace
the provisions of sections 4 and 5 thereof (Secs. 10523 and 10524,
R. S. 1909), which enter generally into the details of making
contracts for, as well as the details and plans of, building roads
and bridges and providing for the appointment of a special
engineer and road builder, designating his duty and salary,
and only remotely refer to the other sections of the act.

2. ————: **Exemption from Taxation.** So much of section 3 of
the County Bond Road Law of 1907, p. 411, as declares that "all
bonds shall be exempt from taxation for any purpose" is null
and void, because contrary to sections 6 and 7 of article 10 of the
Constitution.

3. ————: **Maximum Indebtedness.** Whether the amendment of
1906 to the Constitution removed the maximum limitation to a
county indebtedness, and whether the County Bond Road Law
of 1907 attempted to restore that limitation by requiring a propo-
sition to issue road bonds to be submitted to the people "unless
the debts of the county for said purpose already equal the maxi-
mum indebtedness said county, under the Constitution, may in-
cur," cannot arise in a case where the county court has made the
order and neither the State Auditor nor those opposing the
issuance of the bonds are touched or hurt by it.

4. ————: **Effect of Invalid Part on Whole.** Where the invalid
part of an act does not enter into the life of the balance, but
is separable from it, the rest is not unconstitutional. The
County Bond Road Law, Laws 1907, p. 411, providing for the
issuing of bonds for the construction of permanent roads, does
not rest upon the clause exempting such bonds from taxation,
nor upon sections 4, 5 and 6 which are invalid because they

---

*NOTE—Opinion filed July 8, 1916. Respondent's motion to modify
opinion filed: motion of Hon. T. K. Skinner for a rehearing
filed. Both motions overruled October 23, 1916.

relate to the expenditure of the road bonds which is a subject not expressed in the title. Those sections may be-,cast out, and still there remains intact and valid the part authorizing assent of the people to the issuance of the bonds and their issuance by the court.

5. ————: Fifth Amendment: Inhibition on Powers of State. The Fifth Amendment to the U. S. Constitution has reference solely to acts of Congress. It is in no sense an inhibition on the rights of the several States to enact laws.

6. ————: Use of Money on Streets. The County Bond Road Law, Laws 1907, p. 412, in providing in section 3 that the proceeds of the sale of all bonds "shall be used in the improvement of the public roads of the county and for no other purpose," prohibits the use of the money upon the streets of an incorporated town or city.

7. ————: Taxation of City Property to Build County Roads. The County Bond Road Law of 1907 is not invalid because it permits and authorizes the taxation of city property to pay bonds the proceeds of which are to be used wholly in building public roads in the county outside the corporate limits of incorporated cities. The law is not for that reason in violation of the Fourteenth Amendment prohibiting any state to "deny to any person within its jurisdiction the equal protection of the laws," nor of the Missouri Constitution forbidding the taking of private property for public use without just compensation.

8. ————: ————: Equality of Benefit of Taxation. Taxation laws cannot be held to be invalid on the theory that each individual taxpayer shall benefit from the expenditure of the fund raised in proportion to the amount he may have to pay. Absolute equality of distribution of the benefits accruing from the expenditure of money collected by taxation is an impossibility. The equality demanded by the Constitution is equality in the imposition of the tax. If the tax is levied for a public use, is uniform in its operation, all the forms of the law are observed, and the right of any taxpayer to be heard is not infringed, the question of inequality is not for further consideration.

9. ————: Denomination of Bonds. One-half of any issue of bonds authorized by the County Bond Road Law, Laws 1907, p. 411, must be in denominations of one hundred dollars; and where the voters have authorized bonds to the amount of three million dollars to build public roads, and the county court has authorized an issue of $520,000 of bonds, of which amount $10,000 "shall be in denominations of $100, and the remainder in denominations of $500," the State Auditor is not authorized to register them.

10. ————: **Bonds Callable Only After Fixed Date.** Since the County Bond Road Law of 1907 says that "all bonds shall contain a provision that they are payable at any time within twenty years upon call by the county," the county court has no authority to name a fixed day of maturity prior to which the bonds may not be called for payment—not even though the court may be of the opinion that a better price would be obtained for the bonds and the financial condition of the county would be better conserved if the date of maturity were postponed, since the court cannot set up its judgment in such matter against that of the Legislature.

### MANDAMUS.

WRIT DENIED.

*Richard F. Ralph, George Barnett* and *Thomas N. Dysart* for relators; *Collins, Barker & Britton, A. E. L. Gardner, B. B. Watkins, C. K. Rowland, Harry B. Hawes* and *Chas. W. Bates, amici curiae,* of counsel.

(1) The organic law of this State is not like the Federal Constitution, a grant of power, but is simply a limitation upon legislative power which the Legislature otherwise possesses; and the Legislature may enact any law which does not contravene the Federal or State Constitution. State ex rel. v. Burton, 182 S. W. 748; State v. Wilson, 265 Mo. 13; Harris v. Bond & Mortgage Co., 244 Mo. 686; State v. Wear, 145 Mo. 496; State ex rel. v. Sheppard, 192 Mo. 506; Glasgow v. Rowse, 43 Mo. 479; Cass County v. Jack, 49 Mo. 199. (2) A part of a statute may be constitutional and a part unconstitutional; in which event, if that part of it which is unconstitutional can be eliminated without destroying the law, then it will be declared valid. State ex inf. v. Duncan, 285 Mo. 26; State ex rel. v. Taylor, 224 Mo. 472; State ex rel. v. Gordon, 236 Mo. 176; Shively v. Lankford, 174 Mo.

548; State ex rel. v. Field, 119 Mo. 612; Ensworth v. Curd, 68 Mo. 285; State v. Bostwick, 136 Mo. 353; State ex inf. v. Washburn, 167 Mo. 697; Cooley's Const. Lim. (7 Ed.), pp. 246-250. (3) Sec. 10520, R. S. 1909, does not undertake to limit the indebtedness which the county may incur for road purposes, to five per cent of the value of the taxable property within said county. The said section provides that an election may be held to determine whether or not bonds of said county shall be issued for road and bridge purposes, "unless the debts of the county for said purposes already equal the maximum indebtedness said county may incur." This language simply limits the indebtedness which the county may incur to any limitation that may exist in the present or any future Constitution, and provides that no constitutional limitation shall be exceeded in the issuance of said bonds. Inasmuch as section 12, article 10, of the Constitution contains no limitation as to the indebtedness which the county may incur for road purposes, and inasmuch as section 10520 speaks prospectively and merely has reference to any constitutional limitation that may now or hereafter exist, section 10520 creates no present limitation on the indebtedness which the county may incur for road purposes. (4) Even though the language above quoted from section 10520 would indicate that it was the purpose of the Legislature to limit the indebtedness that the county may incur for road purposes to the five per cent constitutional limitation for purposes other than road, county jail and courthouse purposes, still, the act is not unconstitutional. The function of the Constitution is to create a limitation on power, and not to grant authority, and the purport and effect of section 12 of article 10 of the Constitution is to create a limitation on the power to incur indebtedness of the county in excess of five per cent of the taxable

wealth of the county for all purposes, save and except for road purposes, etc. This has the effect of leaving the Legislature free to act in the matter of incurring indebtedness for road purposes, and the Legislature has the power, there being no forbidding mandate in the Constitution, to establish any limitation it may see fit, in incurring indebtedness for road purposes. (5) The title of the act is sufficient in that it is a fair forecast of the contents of the bill and its subject, so as not to mislead the lawmakers or the people, and the provisions of the bill are germane to the subject of the bill as expressed in its title. Laws 1907, p. 411; Barnes v. Kirksville, 180 S. W. 547; State ex rel. v. Ransen, 73 Mo. 86; State ex rel. v. Heege, 135 Mo. 119; Ewing v. Hoblitzelle, 85 Mo. 64; O'Connor v. Transit Co., 198 Mo. 633; Hannibal v. County, 99 Mo. 671; State ex rel. v. Meade, 71 Mo. 268; State v. Matthews, 44 Mo. 523; State v. Miller, 45 Mo. 495; State v. Doering, 194 Mo. 408; State ex rel. v. Gordon, 236 Mo. 142; Cooley on Const. Lim., p. 174. The title of the act at all events is sufficient to cover the voting and issuance of bonds for the grading, etc., of roads, which comprise the matters in this proceeding. (6) Under the Constitution and laws of this State, a municipal corporation may incur indebtedness and expend its revenues for a "city purpose," outside of the city limits as well as for such purpose within the city limits. *E converso*, a county may expend its revenues for a county purpose anywhere within the limits of the county. The construction of a public bridge between two cities is for a city purpose. Haessler v. St. Louis, 205 Mo. 680. Nor is it any the less a city purpose because a part of a public highway improved, is outside of the limits of the city. Skinner v. Hutton, 33 Mo. 249; Elting v. Hickman, 172 Mo. 258. To allow "any county" "to become indebted . . . for the erec-

tion of a courthouse or jail, or for the grading, constructing, paving, or maintaining of paved, graveled, macadamized or rock roads and necessary bridges and culverts therein,'' is by the clear and unambiguous language of the first proviso of section 12 of article 10 of the Constitution made a ''county purpose.'' The same purpose expressed in the Constitution is expressed in the same language by the statute here involved. R. S. 1909, sec. 10520. The scheme for the construction and maintenance of a general system of roads and bridges and culverts ''therein,'' that is, in ''any county,'' provided for by the Constitution and the statute alike, includes a system ramifying and coextensive with the territorial limits of the county. Neither the Consitution nor the statute excepts from its operation any place within the limits of the county; and since neither the organic law nor the statute makes any such exception, the courts should not write any exception therein. Constitution, art. 10, sec. 12; R. S. 1909, sec. 10520; Laws 1907, p. 411. As a city may expend its moneys for the construction or maintenance of highways or bridges beyond the city limits, so long as such expenditure is for a city purpose, so may the county incur an indebtedness and expend the moneys derived thereby for a county purpose, anywhere within the limits of the county, including cities, towns and villages therein, when the highways or bridges so made are connecting parts or continuances of public highways of the county. State ex rel. v. County Court, 34 Mo. 546; Hannibal v. Marion County, 69 Mo. 571; State ex rel. v. Taylor, 224 Mo. 468; State ex rel. v. County Court, 128 Mo. 427. The discretion to expend the fund derived from the sale of the bonds, authorized by the provisions of the Constitution and statute in question in a manner which will be most conducive to the general welfare of the inhabitants of the county, is

invested in the county court. State ex rel. v. Everett, 245 Mo. 717. Even though it be held that none of the fund derived from the sale of the bonds can be expended for the construction of that part of the public highways or bridges within the limits of any incorporated city or town, still, the provisions of section 12 of article 10 of the Constitution of Missouri and of the Act of 1907, following said section of the Constitution, here involved, are not violative of section 1 of article 14, or of article 5 of the Amendments to the Constitution of the United States. Lamar Twp. v. Lamar, 261 Mo. 185; Kelly v. Pittsburg, 104 U. S. 78. An expenditure of county moneys for an authorized county public use which is incidentally or chiefly beneficial to the inhabitants of a city in the county, is not an expenditure of county moneys in violation of the Constitution. County Court v. Griswold, 58 Mo. 192. (7) Section 10522 provides that at least one-half of one issue shall be in denominations of not to exceed $100. This means exactly what it says. Five hundred and twenty thousand dollars of bonds is divided into two issues, one issue being of $20,000 and the other issue of $500,000, and the making one-half of issue number one, being the $20,000 issue, in denominations of $100 is a literal compliance with the statute. An analysis of the language of the statute conclusively demonstrates that the Legislature intended to invest the county court with the discretion of dividing the bonds into as many issues as it may see fit. (8) The county court properly exercised its discretion in making an order which determines, in advance, at what specific times the bonds shall be called. The plain intendment of the statute is to the effect that the bonds shall be callable at any time within twenty years and that the time when the bonds shall be callable is a matter properly within the discretion of the county court.

*John T. Barker,* Attorney-General, and *W. T. Rutherford,* Assistant Attorney-General, for respondent.

(1) The organic law of the State is not a grant of power, but a limitation on power. State ex rel. v. Burton, 182 S. W. 748; McGrew v. Railroad, 230 Mo. 496; State ex rel. v. Shepherd, 192 Mo. 497; State ex rel. v. Warner, 197 Mo. 650; Glasgow v. Rowse, 43 Mo. 479; State v. Railroad, 253 Mo. 650. (2) That part of Sec. 10520, to-wit, "unless the debts of the county for said purpose (road improvement purposes) already equal the maximum indebtedness said county under the Constitution may incur," is in conflict with the first proviso in Sec. 12, Art. 10, State Constitution, which forbids the Legislature placing a limitation upon the amount of indebtedness a county may incur for road improvement purposes. (3) Section 10522 is violative of sections 6 and 7 of article 10 of the Constitution in that it exempts the bonds issued thereunder from taxation. (4) Sec. 10522, R. S. 1909, under which the bonds presented for registration are issued, is in conflict with and violative of Sec. 1, Art. 14, and Art. 5, U. S. Constitution, and Sec. 21, Art. 2, State Constitution, in that taxes are authorized to be levied and collected upon all taxable property in incorporated cities, towns and villages in relator county to pay the principal and interest of said bonds and prohibiting at the same time the expenditure of any part of the proceeds of said bonds upon any street or streets in any of the many cities, towns and villages in said relator county, thereby depriving such owners of taxable property of their property without due process of law, and denying to them the equal protection of the law as guaranteed to them by the provisions of the State and Federal Constitutions aforesaid. (5) The laying of a tax for a public purpose does not deprive one of his

property without due process of law or deny to him the equal protection of the law. Kelly v. Pittsburg, 104 U. S. 78. (6) Public highways belong, from side to side and end to end, to the public. Elliott on Roads and Streets (3 Ed.), sec. 628; Lath v. Theatre Co., 197 Mo. 348; Chapman v. Lincoln, 25 L. R. A. (N. S.) 400; State ex rel. v. Burton, 182 S. W. 749. (7) One of the most important functions of government is to make provision for building roads, and a tax for that purpose may be lawfully laid and collected. Cooley on Taxation, p. 212; State ex rel. v. Burton, 182 S. W. 749. (8) The lay of a tax on urban property for the purpose of building county or State highways is not unlawful. Lamar Twp. v. Lamar, 261 Mo. 180; Green City v. Martin, 237 Mo. 474; State ex rel. v. Burton, 182 S. W. 748; State ex rel. v. County Court, 142 Mo. 582; Elting v. Hickman, 172 Mo. 258. (9) That Secs. 10520 to 10525, R. S. 1909, both inclusive, are violative of Sec. 28 of article 4 of the State Constitution in that the subject thereof was not clearly expressed in the title to the act when the same was enacted. Laws 1907, p. 411; State ex rel. v. Gordon, 261 Mo. 640; State ex rel. v. Revelle, 257 Mo. 538; State v. Horton, 255 Mo. 180; State ex rel. v. Gordon, 245 Mo. 34; State ex rel. v. Gordon, 223 Mo. 13. (10) The act in question is violative of Sec. 53, Art. 4, State Constitution, in that it is class legislation and discriminatory against owners of urban property. State ex rel. v. Burton, 182 S. W. 749. (11) A part of a statute may be constitutional and a part unconstitutional, in which event, if that part of it which is unconstitutional can be eliminated without destroying the law, then it will be declared valid. 1 Lewis's Sutherland on Stat. Const., sec. 296; State v. Newell, 140 Mo. 287; Railroad v. State, 55 Ark. 207; Harrod v. Latham, 77 Kan. 469. (12) It is only necessary that the title

to an act indicate in a general way its subject, without entering into details. Sound policy and legislative convenience dictate a liberal construction of the titles of statutes. State v. Whitaker, 160 Mo. 59; Ward v. Board of Eql., 135 Mo. 324: Witzman v. Railroad, 131 Mo. 617; Elting v. Heickman, 172 Mo. 251. (13) The order of the court authorizing the issue of the bonds presented for registration is in violation of section 10522 in that more than one issue of bonds is contemplated by relators, when the statute contemplates only one issue. Sec. 10522, R. S. 1909. (14) Whether the expense of a local improvement shall be borne by the whole State through general taxation or by the district benefited, through special assessments, is a matter of legislative discretion. Hagan v. Reclamation Dist., 111 U. S. 701; Bauman v. Ross, 167 U. S. 589; Norwood v. Baker, 172 U. S. 298.

*Thomas K. Skinker, Amicus Curiae.*

The bonds presented to the State Auditor for registration are not lawful obligations of the county of St. Louis, and the State Auditor properly refused to register them, for the following reasons: (1) The statute under which it is proposed to issue these bonds denies to the owners of property in the incorporated cities in the county of St. Louis the equal protection of the laws, in violation of section 1 of article 14 of Amendments to the Constitution of the United States. R. S. 1909, secs. 10520-25; Laws 1907, p. 411; State ex rel. v. Heege, 39 Mo. App. 49; State ex rel. v. County Court, 142 Mo. 575; Township v. Lamar, 261 Mo. 171; Green City v. Martin, 237 Mo. 474; Kurtz v. Knapp, 127 Mo. App. 608; 28 Cyc. 837; Almand v. Railroad, 108 Ga. 417; McGrew v. Stewart, 51 Kan. 185; Yick Wo v. Hopkins, 118 U. S. 356; State ex rel. v. Railroad, 195 Mo. 228; State ex

rel v. Leffingwell, 54 Mo. 458; State v. Miksicek, 225
Mo. 577; Kansas City v. Grush, 151 Mo. 128; Mc-
Cully v. Railroad, 212 Mo. 14; George v. Railroad,
214 Mo. 557; State ex rel. v. Railroad, 246 Mo. 512;
Julian v. Kansas City Star, 209 Mo. 35; Houston
v. Pulitzer Pub. Co., 249 Mo. 332; Reagan v. Farmers
L. & T. Co., 154 U. S. 399; Railroad v. Minnesota,
134 U. S. 418; Cotting v. Stock Yards Co., 183 U. S.
110; Truax v. Raich, 239 U. S. 33; Railroad v. Ellis,
165 U. S. 150; Railroad v. Smith, 173 U. S. 684;
Myles Salt Co. v. Drainage Dist., 239 U. S. 33; Rail-
road Co. v. Gibbes, 142 U. S. 386; Strauder v. West
Virginia, 100 U. S. 303; Virginia v. Rives, 100 U. S.
313; State v. Loomis, 115 Mo. 313; State ex rel. v.
Railroad, 246 Mo. 512. (2) The operation and effect
of the said statute is to take the property within
the incorporated cities in St. Louis County without
due process of law in violation of section 1 of article
14 of Amendments to the Constitution of the United
States. Kansas City v. Grush, 151 Mo. 128; McCully
v. Railroad, 212 Mo. 14; Reagan v. Farmers L. &
T. Co., 154 U. S. 362; Railroad v. Minnesota, 134 U.
S. 418; Railroad v. Ellis, 165 U S. 150; Railroad v.
Smith, 173 U. S. 684. (3) The operation and effect
of said statute is to take the private property within
the incorporated cities in said counties for public
use without just compensation being made to the
owners of such property, in violation of section 21
of article 2 of the Constitution of Missouri. (4) The
operation and effect of said statute is to grant to the
owners of property in said county outside of the lim-
its of incorporated cities therein an exclusive right,
privilege and immunity of having public roads of the
county built and improved with the proceeds of
bonds sold under said statute, in their own midst, to
the exclusion of the owners of property within the
incorporated cities in said county, in violation of

section 53 of article 4 of the Constitution of Missouri. (5) The County Road Bond Law is void because it violates section 7 of article 10, of the Constitution of Missouri, in that it exempts the county road bonds from all taxation. St. Louis v. Spiegel, 70 Mo. 145; St. Louis v. Spiegel, 90 Mo. 587; State ex rel. v. Leffingwell, 54 Mo. 471; Copeland v. St. Joseph, 126 Mo. 429; Julian v. Kansas City Star, 209 Mo. 71; State v. Bengsch, 170 Mo. 114; State ex rel. v. Railroad, 246 Mo. 512; Hislop v. Joplin, 250 Mo. 588; State ex rel. v. Wardell, 153 Mo. 326. (6) The title of the act is insufficient because it is not an index to the whole act, and the act is therefore wholly void under the Constitution, art. 4, sec. 28. Williams v. Railroad, 233 Mo. 666; State v. Hurley, 258 Mo. 275; State ex rel. v. Wiethaupt, 231 Mo. 449; Witzmann v. Railroad, 131 Mo. 612; State ex rel. v. Gordon, 233 Mo. 383; Laws 1865, p. 117; Sedgwick on Stat. and Const. Law (2 Ed.), p. 521; Ewing v. Hoblitzelle, 85 Mo. 64; State v. Brodnax, 228 Mo. 54; O'Connor v. Transit Co., 198 Mo. 633; State ex rel. v. Miller, 100 Mo. 439; State v. Doering, 194 Mo. 408; Elting v. Hickman, 172 Mo. 252; State ex rel. v. Gordon, 261 Mo. 631; State v. Coffee Co., 171 Mo. 634; State v. Persinger, 76 Mo. 246; St. Louis v. Wortman, 213 Mo. 131; Coffey v. Carthage, 200 Mo. 216; Cox v. Railroad, 174 Mo. 588; State v. Blackstone, 115 Mo. 424; Cooley on Const. Lim. (2 Ed.), 134; State ex rel. v. Ransan, 73 Mo. 78; Barnes v. Kirksville, 180 S. W. 545; State ex rel. v. County Courts, 102 Mo. 531; State v. Railroad, 263 Mo. 642; State ex rel. v. Nast, 209 Mo. 732; State v. Distilling Co., 237 Mo. 103; Hayes v. Poplar Bluff, 173 S. W. 676; (7) At least one-half of the total issue of three millions of dollars of bonds must be in denominations of $100 or less. The order of the county court is based on the opposite theory, violates this rule and

is illegal.   (8) The bonds must all be subject to call
and payment at any time.   The order of the county
court undertakes to limit the power of itself and its
successors to calling the bonds at certain dates; and
is for that reason illegal.   (9) The order of the
county court does not provide a sinking fund suffi-
cient to pay one-twentieth of the full sum of three
millions of dollars as required by the statute and
the Constitution of Missouri.

FARIS, J.—This is an original proceeding in
mandamus, whereby it is sought to compel respond-
ent, as State Auditor, to register two separate issues
of road bonds.   These consist of 620 bonds, one hun-
dred of which are each of the denomination of $100
and the balance in denominations of $500 and $1000,
respectively, and amounting in the aggregate to the
sum of $520,000.

These bonds were issued by the county court of
St. Louis County under the provisions of Laws of
1907, p. 411, now sections 10520 to 10525, Revised
Statutes 1909, both inclusive, pursuant to an election
duly held (so far as that issue concerns this case at
least), and are part of an aggregate issue of $3,000,-
000, issuance of which was assented to by the voters
of that county at an election held on the 15th day of
February, 1916.

Upon the determination of the fact that more
than two-thirds of the voters had voted in favor of
the incurring of a bonded indebtedness of *three mil-
lions of dollars,* the county court of St. Louis County
made certain orders intending to carry into effect
the permission so given.   Not deeming it good policy
for economy's sake to issue at once the entire sum
of $3,000,000 voted, the said county court (herein-
after called simply county court) made an order to
issue the two lots of bonds now here in question.   This

part of the order made by the county court is pertinent to show this purpose, as well as for the making clear of another point on which much stress is laid. So much of the order of the county court as illuminates these points reads thus:

"Whereas, in order to improve or construct the roads already contracted for or about to be contracted for, it is necessary to now issue five hundred and twenty thousand dollars road bonds of St. Louis county; and

"Whereas, under the provisions of section 12, article 10, of the Constitution of Missouri, and section 10522 of the Revised Statutes of Missouri, 1909, it is the duty of this court, before or at the time of incurring the indebtedness of five hundred and twenty thousand dollars by the issuance of said bonds, to provide for the collection of an annual tax sufficient to pay the interest of said indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty years from the time of contracting the same; and

"Whereas, the court is of the opinion that to levy for said purpose an annual tax of more than one-twentieth of said five hundred and twenty thousand dollars to constitute a sinking fund for the payment of said bonds at their maturity would be unjust and burdensome to the county and the taxpayers thereof; and

"Whereas, section 10522 of the Revised Statutes of Missouri, 1909, provides that road bonds of all counties shall mature within twenty years after their date and shall contain a provision that they are payable at any time within twenty years upon the call of the county; and

"Whereas, the taxes hereinafter levied will not be sufficient to pay off more than one-twentieth of

said' five hundred and twenty thousand bonds annually; and

"Whereas, from the evidence in this case the court finds and now declares that the price obtainable for these bonds depends to a large extent upon their date of redemption, and the longer the period of the redemption date the greater is the price obtainable; and

"Whereas, to make all the bonds hereinafter provided for payable at any time within twenty years upon the call of the county when there will be available from the taxes hereinafter levied a sum sufficient to retire only one-twentieth of said bonds annually, would result in a loss to the county of the difference in price obtainable for bonds callable at any time and bonds callable at fixed periods; and

"Whereas, the premises considered, to make all the bonds hereinafter provided for payable at any time within twenty years upon the call of the county, would defeat the manifest intention of the Legislature to encourage road building in Missouri by enabling the various counties in the State to obtain the maximum possible price for their bonds.

"Now, therefore, it is hereby ordered that the road bonds of St. Louis County, Missouri, to the amount of five hundred and twenty thousand dollars shall be issued without delay, which bonds shall consist of two issues, one of which shall be dated May 1, 1916, and consist of twenty thousand dollars, to be known as 'St. Louis County, Missouri, Road Bond Issue Number One,' and the other shall be dated June 1, 1916, and consist of five hundred thousand dollars, to be known as 'St. Louis County, Missouri, Road Bond Issue Number Two.' Each issue shall mature twenty years from the date of their issuance. The bonds of issue number one shall be numbered from one to one hundred twenty inclusive, and one-half of said issue,

or ten thousand dollars face value of said bonds, shall be in denominations of one hundred dollars, and the remainder in denominations, of five hundred dollars. All of the bonds of issue number two shall be in denominations of one thousand dollars each, and the bonds of said issue shall be numbered from one hundred and twenty-one to six hundred and twenty, both numbers inclusive.

"All the bonds of each issue shall bear interest at the rate of four and one-half per centum per annum, payable semi-annually, principal and interest to be payable at the Mercantile Trust Company in the city of St. Louis, Missouri. The said bonds shall be signed by the presiding judge of the county court and attested by the clerk and the seal of the county. The coupons attached to all of said bonds shall be executed with the *fac simile* signature of the presiding judge of the county court.

"Said five hundred and twenty thousand dollars bonds shall be payable at the times hereinafter stated upon the call of the county and an order of the court made of record and published twice in two newspapers of St. Louis, Missouri, stating the date when the court will order any of said bonds to be paid, and if said order is made three months before the date of payment the interest on said bonds shall stop after such date of payment, provided the county has on hand on said date a sufficient amount of money applicable to their payment to pay the same. Calls for any of the bonds of either issue for payment shall be by number, beginning with number one and continuing in consecutive order until the highest number is reached. This court on behalf of St. Louis County hereby covenants and agrees with the purchasers of any of said five hundred and twenty thousand dollars bonds that none of said bonds shall be callable for payment at any time prior to the dates

hereinafter stated, and said agreement is hereby expressly made a part of the consideration and a part of the contract, for the purchase price of said bonds, and the county pledges its faith that said agreement will be fully complied with by the county court and by all present and future officials of said county who may be vested by law with authority in regard to said bonds.''

Upon the presentation for registration of said two issues of road bonds to the respondent as State Auditor, he refused to register the same; contending, not alone in statutory phrase, ''that all conditions of the laws'' (Sec. 1275, R. S. 1909) had not been complied with, but urging that a law passed by a co-ordinate branch of government is constitutionally invalid. Whereupon this original proceeding in mandamus was commenced against respondent by the county of St. Louis, through the relators, who are the present judges of the county court of said county.

The return of the respondent admits all of the facts stated by relators to be true, but sets up as reasons why respondent as such State Auditor should not register these bonds: (1) That sections 10520 and 10522, which (with section 10521) confer authority to issue such bonds as are here in question, are unconstitutional and void, for that (a) said section 10520 is in violation of section 12 of article 10 of the Constitution of Missouri; (b) likewise in violation of the provisions of section 21 of article 2 of the Constitution; (c) also of section 53 of article 4 of the Constitution; and (d) of section 1 of the 14th Amendment and of the 5th Amendment to the Constitution of the United States; (2) that said section 10522 violates section 7 of article 10 of the Constitution of Missouri, in that it attempts to exempt bonds of the sort here in question from taxation;

(3) that the title of the Act of March 19, 1907 (Laws of 1907, p. 411), now the sections here in controversy, is constitutionally insufficient, for that it fails to comply with section 28 of article 4 of the Constitution, in this, that said title does not disclose the contents of sections 10523 and 10524, which are urged as being vital to the act; and (4) that the amounts, tenor and dates of redemption of the two issues of 620 bonds, aggregating $520,000, offered for registration, are not in compliance with the provisions of the statute, and so for the latter reason, regardless of the other points raised, these issues of bonds are not entitled to be registered.

In passing it may be stated that of the total sum of $3,000,000 voted only the bonds here in question have ever been issued or ordered by the county court so to be.

To the foregoing return the relators demur, thus leaving the matter upon cold questions of law, all facts pleaded being admitted.

I. As stated in our setting forth of the facts, the sections of the statute here in dispute, came into existence in 1907. [Laws 1907, p. 411.] The title thereof as the same was enacted, ran thus: "An act to authorize county courts, upon the assent of the voters of the county, to issue bonds for the grading, constructing, paving and maintaining of paved, gravelled, macadamized or rock roads and necessary bridges and culverts therein."

It is contended that the above quoted title is not sufficient to validate constitutionally the enaction of sections 4 and 5 of this act. Let us see if this is true. Sections 4 and 5 of the original act, now sections 10523 and 10524, Revised Statutes 1909, provide for the making of contracts for the grading and construction of roads, and for the building of bridges, and for the employment of a competent civil engineer,

with divers details as to the duties of such engineer and of the manner in which such work shall be done. It will be seen that the only specific reference made in either of said sections 4 and 5 to the subject-matter of the three first sections of this act, is in this that section 3 of the act provides that the fund into which the proceeds arising from the sale of road bonds shall be paid shall be kept separate and shall be "known as the *'Road Construction Fund;'*" and that said section 5 provides that when any road shall have been improved or constructed to the satisfaction of the county court a warrant shall be drawn in the usual statutory way upon the treasurer, which warrant shall be paid out of the *"Road Construction Fund."* In no other way whatever are sections 4 and 5 "tied" to the three preceding sections of this act. So far as appears, absent the somewhat remote reference above noted, these latter sections attempt to provide a scheme and working details for the grading, paving or constructing of all roads and the building of all bridges in all of the counties in the State. In short, these sections do not by their terms express the idea that they are intended merely to carry out the necessary purpose of expending the money raised by the sale of the road bonds, authorization for the issue, and the issuance of which are provided for by the three sections preceding, nor does the title say so. If there had been such provision; if it had been made even reasonably clear that sections 4 and 5 but provided details for the expenditure of the above moneys only, we might be able to say that as to these two sections the title clearly expresses the subject-matter of the act's contents and that it is good.

At the time (March 19, 1907) the act here under examination was passed, there were many provisions in the statutes providing for the making of contracts

for the building of roads and for the appointment of commissioners, overseers and supervisors to do, or to superintend the doing of said work. [Cf. Secs. 9431, 9498, 9511, 9522, 9523, 9546 and 9568, R. S. 1909; Laws 1907, p. 401 et seq.] It does not aid us now that many of these sections, as well as a number of analogous ones, e. g., sections 9410 to 9458, Revised Statutes 1899, and sections 9561 to 9601, Revised Statutes 1899, have been since either repealed, or wholly or partially re-enacted or superseded. [Laws 1909, p. 766; Secs. 10433 to 10485, R. S. 1909.]

It will be noted that the title to the act under discussion does not mention any other of its contents or provisions except the single one of authorizing *"county courts, upon the assent of the voters of the county, to issue bonds for the grading, etc., of paved, etc., roads and necessary bridges and culverts therein."* It refers in short, only to the manner of getting the money, not the manner of expending same when gotten; it expresses and limits the purposes of the application of the money, but not the details and manner of application. Sections 4 and 5, as we have seen, *enter generally* into the details of making contracts for, as well as the details and plans of, building roads and bridges; provide for the appointment of a special engineer and road builder; designate his duties, and provide for fixing his salary, but do not, but remotely by inference only, refer to the other sections of the act and do not even mention culverts.

Aiding us in the conclusion reached is the fact that four days before the act here under discussion was approved, the same Legislature had passed and the Governor had approved "an act to provide for the creation of county highway engineer, and to define the duties thereof." [Laws 1907, p. 401 et seq., approved March 15, 1907.] Many of the provisions of the act last above mentioned are either in con-

flict with, or practical duplications of many of the provisions of said sections 4 and 5 (Cf. sections 14 to 19, both inclusive, Laws 1907, p. 401). Large parts of this latter act (remarkable as it may seem for even a part of a road law to survive a legislative session), are yet in force, after suffering amendment in 1909, however (Laws 1909, p. 755), and now appearing as article 5 of chapter 102, Revised Statutes 1909. It was said concerning this act as last amended, that it affords authority for the making of contracts for the grading, draining and construction of stone, gravel, rock and other improved roads. [State ex rel. v. Everett, 245 Mo. l. c. 718.] But obviously upon this question we are not here called on to pass.

We are constrained to hold that sections 4 and 5 are unconstitutional because they are not clearly expressed in the title to the act. [Sec. 28, art. 4, Constitution of Missouri.] For this section of the Constitution requires both singleness of subject and the sufficient expression of that subject in the title.

II. It is also urged that the provisions of section 3 of this act, which provides that "no bond shall bear a higher rate of interest than five per cent, *and all bonds shall be exempt from* Exemption from Taxation *taxation for any purpose,"* is, as to the attempted exemption from taxation, null and void, because contrary to the provisions of sections 6 and 7 of article 10 of the Constitution. We think this is so self-evident that discussion of it would not clarify but merely muddle. However commendable may be the spirit of the Legislature in attempting to make the State a partner with the buyer and holder of these road bonds, it is obvious that the effort must prove abortive, because it is in the very face of the Constitution. We do not hesitate then to hold as utterly void so much of the said sentence

which we quote, as seeks to make this exemption from taxation. We italicize the void part for emphasis. [Secs. 6 and 7, art. 10, Constitution.]

III. It is strenuously urged that inasmuch as the amendment adopted at the general election held in November, 1906 (Laws 1905, p. 309; Laws 1909, p. 905), took off all of the constitutional limitations as to the amount of the bonded indebtedness which can be created in the several counties for road, bridge and culvert building purposes, all that part of section 1 of said act (now Sec. 10520, R. S. 1909) which provides that upon the coming into the county court of any county of a petition signed by one hundred taxpaying citizens thereof, the said court shall order an election to be held submitting the proposition of issuing road bonds, *"unless the debts of the county for said purpose already equal the maximum indebtedness said county, under the Constitution, may incur,"* is constitutionally invalid. Conceding that the constitutional amendment in question "took the lid off" (to drop into the virile vernacular of counsel) of the limitation theretofore existing, and that in a proper case the attempt of the statute to replace such limitation is void, does the question arise here? It could obviously arise in a county having a bonded indebtedness equalling five per cent of the assessed valuation, or *wherein* the amount of bonds sought to be authorized exceeded, say, five per cent of the assessed taxable wealth thereof, *and wherein* the county court refused for such reason to order the election prayed for; but it cannot arise in this case, because respondent and those opposing the issuance of the bonds in question, are neither touched nor hurt by it. [State v. Seebold, 192 Mo. 1. c. 731; State ex rel. v. Williams, 232 Mo. 1. c. 65.] The county court has

*Maximum Indebtedness*

made the order and that fact ends this constitutional question.  When the request comes up for us to compel a county court to make an order submitting to the voters a proposition to issue road bonds greater in amount than, say, five per cent of any given county's assessed valuation, the point will then be in *that* case.  It is obviously not involved in this one.

IV.  So much being said, the question recurs, whether the remainder of this act is valid:  Is so

**Effect of Invalid Part on Whole .**

much of it good, as provides for a vote and for the issuing of road bonds notwithstanding divers parts of sections of the act are found to be constitutionally vicious?  The rule by which we test this question is well settled.  The trouble lies always in applying it to the facts.  In the case of State ex rel. v. Wright, 251 Mo. l. c. 336, we took occasion to collate the late cases upon this question, and summing up among other things, said:

"We need not cite numerous cases from other jurisdictions or load down this opinion with textbook excerpts in order to prove that part, a section, a sentence or a clause of a statute may be constitutionally invalid and the remainder good.  We may merely say that this is a rule wholly or well-nigh universal in all common law jurisdictions, and one to which this court has lent its concurrence.  VALLIANT, J., in the case of State ex inf. v. Washburn, 167 Mo. l. c. 697, said:

" 'The point is advanced that if the Act of 1899 is unconstitutional in the particular named, the whole act is void and the incumbent has no title to the office.  The power attempted to be conferred on the partisan committee is not an essential element in the whole act.  Where the part of an act that is unconstitutional does not enter into the life of the act itself,

and is not essential to its being, it may be disregarded and the rest remain in force; that is this case.'

"This view was expressly approved in the later case of State ex rel. Tolerton v. Gordon, 236 Mo. l. c. 176, where the court says, referring to the Washburn case:

" 'The court also held that although the part of the act providing the manner of making the appointment in order to secure a bi-partisan board was void, the remainder of the act was valid, and the court upheld the appointment made by the Governor contrary to the express requirement of law.'

"As was so aptly stated by GRAVES, J., in his concurring opinion in the Tolerton case, l. c. 186:

" 'From it [the Law of 1899—which is in this particular precisely similar to the law of 1911, now under discussion], however, we carve out one of the vital things in the minds of the legislative body and say enough is left to make a good law.'

"We cannot state the rule better or more briefly. We might state it in different language, by saying that, if after cutting out and throwing away the bad parts of a statute, enough remains, which is good, to clearly show the legislative intent, and to furnish sufficient details of a working plan by which that intention may be made effectual, then we ought not as a matter of law to declare the whole statute bad. [Cooley on Con. Lim. (7 Ed.), 247; State ex rel. v. Gordon, 236 Mo. l. c. 171; State ex rel. v. Taylor, 224 Mo. l. c. 474; State v. Bockstruck, 136 Mo. 335.]"

Here the matter of issuing bonds for the construction of gravelled or paved or macadamized public highways, in the several counties cannot be said to vitally rest upon the question whether such bonds are exempt from taxation. That such an exemption might serve to procure a more ready market for such

bonds at a rate of interest even lower than the maximum set out in the act cannot be denied, but this maximum is placed at a figure sufficiently high it would seem as to enable a market to be found for such bonds at the rate limited, even though they may be reached for assessment and taxation. We know this, because we judicially notice matters of current public history affecting the State and its important undertakings and know that State bonds for the erection of the new capitol building have been issued and sold, though they were not exempt from taxation and bore interest, pursuant to express statute, at the rate of *only three and one-half per cent per annum.* [Laws 1911, p. 416.] With this fresh incident in mind we cannot say with certainty (in fact, the view upon the reason of the thing leans the other way) that but for the fact that the Legislature believed the tax exemption feature of section 3 was valid, it would not have passed this act. Moreover, this feature is but a gratuitously injected incident, non-vital and absolutely disconnected in detail and sense from the essential purpose of the act, which was to issue bonds for the construction, repair and maintenance of gravelled, paved or rock roads. Whatever may be urged against the correctness of this view, it is obvious that the converse of it is not beyond reasonable doubt, which doubt we are enjoined to give when necessary in order to uphold a legislative act. [State v. Baskowitz, 250 Mo. 82, and cases cited.]

Likewise we are impressed that this is also true as regards the effect of the constitutional invalidity of sections 4 and 5, of this act. Counsel for relator urge upon us a long line of cases, of which Ewing v. Hoblitzelle, 85 Mo. 64, is a type. In this case at page 71, it was said:

"Whether a provision of a statute is or is not germane to the general subject, is determinable by

268 Mo.—47

a rule laid down by Mr. Sedgwick, in his work on Statutory and Constitutional Law, page 521, in a note, which is as follows: 'Where all the provisions of a statute fairly relate to the same subject, have a natural connection with it, are the incidents or means of accomplishing it, then the subject is single, and if it is sufficiently expressed in the title the statute is valid.' "

To us it is fairly obvious that the difficulty discussed in the Ewing case, as shown by the excerpt above, is not the same as the difficulty herein confronting us. We concede the singleness of the purpose of *three sections* of the act in the instant case, and of the germaneness of the title to that purpose. The trouble is that such purpose, so far as concerns the manner of and the attempted safe-guards enacted *for the expenditure of the proceeds of these road bonds is not sufficiently expressed in the title,* which sufficiency of expression in the title is seen to be a condition precedent to the goodness of such title, as is said in express terms in the line of cases cited. [Ewing v. Hoblitzelle, 85 Mo. 64; Elting v. Hickman, 172 Mo. l. c. 252; State v. Parker Distilling Co., 237 Mo. l. c. 106; State ex rel. v. Miller, 100 Mo. 439.] It is so clear as to be well-nigh self evident, that we may not excuse the obvious badness of the title to this act upon the ground urged. We have concluded, however, that while sections 4, 5 and 6 are not clearly expressed in the title of this act, and while said sections are for that reason void, they may yet be elided and taken away from the act, leaving the power to vote assent to the issuance of said bonds, and the issuance of the same, intact and valid. We have gone so far as to hold that the plow of judicial construction may run through a sentence of an act even, dividing it into halves, and leaving that which is bad

upon one side and the good upon the other. [State ex inf. v. Duncan, 265 Mo. 26.]

V. The 5th Amendment to the Constitution of the United States urged by respondent against this act has sole reference to the acts of the Congress. It is in no sense an inhibition against the right of the several States to pass laws. This is too well settled for argument or discussion. [State v. Buente, 256 Mo. 1. c. 237, and cases cited; Capital City Dairy Co. v. Ohio, 183 U. S. 238.]

*Fifth Amendment*

VI. It is furthermore urged that the act under fire is class legislation and discriminatory against owners of urban property. No specifications of this point of alleged invalidity are furnished us. The case cited does not bear out the contention urged. But so far as this point is germane to that other one so variously raised, viz., the alleged lack of due process of law and the alleged taking of private property for public use without just compensation, we will hereafter refer to it and discuss it.

*Class Legislation*

In passing we may observe that learned counsel filing briefs herein as *amici curiae,* urge us to overrule the case of State ex rel. v. County Court, 142 Mo. 575, which held that a statute providing for the expending of county money upon the streets of incorporated cities, over which streets the county has no control, is unconstitutional. This we assume, upon the theory that the act before us provides for the use of the proceeds of these road bonds upon the streets of such cities. The act provides that "the proceeds of the sale of all bonds shall be turned into the county treasury, and *shall be used in the improvement of the public roads of the county and for no other purpose.*" [Sec. 3, Laws 1907, p. 412.] In the face of this lan-

guage we think it would be idle to discuss whether this money can be used upon the streets of an incorporated town or city; and so it has been held. [Green City v. Martin, 237 Mo. 1. c. 484.] Learned counsel for both respondent and relators take the bold view that the question presented must be met on the conceded theory that incorporated towns and cities may not share in it. In this we think they are correct (Green City v. Martin, supra), and from the latter viewpoint we discuss the contention, infra.

VII. The next, and we opine the chief contention of unconstitutionality urged, is thus set forth by respondent:

"Section 10522, Revised Statutes 1909, under which the bonds presented for registration are issued, is in conflict with and violative of section 1 of article 14 and article 5 of the Federal Constitution, and section 21 of article 2 of the State Constitution, in that taxes are authorized to be levied and collected upon all taxable property in incorporated cities, towns and villages in relator county to pay the principal and interest of said bonds and prohibiting at the same time the expenditure of any part of the proceeds of said bonds upon any street or streets in any of the many cities, towns and villages in said relator county, thereby depriving such owners of taxable property of their property without due process of law, and denying to them the equal protection of the law as guaranteed to them by the provisions of the State and Federal constitutions aforesaid."

*Taxes on City Property for Country Roads*

This contention is based upon the fact that the act in effect provides that the proceeds of the sale of the road bonds shall be used solely "for public road purposes," in alleged contradistinction to the use thereof for the improvements of the streets and alleys of such incorporated cities as may be, and (as

agreed among the facts here) are situate in the county of St. Louis.

It is conceded by the pleadings to be a fact that there are eleven incorporated cities and towns in the county of St. Louis, containing in the aggregate 25,000 inhabitants and constituting one-fourth of the whole population of St. Louis County, and that these cities have an aggregate area of more than seventeen square miles, and that within such cities and belonging to the residents thereof and subject to taxation for payment of the interest and sinking fund of these road bonds there is situate more than twenty-one million dollars worth of property. So, the broad question arises: May the owners of this urban property be taxed to pay bonds and interest thereon, when the proceeds thereof are to be used wholly in building public roads in the county outside the corporate limits of such towns and cities? Is a law levying such a tax for such a purpose contrary to section 1 of the 14th Amendment to the Federal Constitution? The alleged applicatory part of said section 1 of the Fourteenth Amendment reads thus:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property without due process of law, *nor deny to any person within its jurisdiction the equal protection of the laws.*"

Reduced to its last analysis, this contention of respondent amounts to saying that notwithstanding all of the forms of law are observed, and the right of any taxpayer to be heard is in nowise infringed, the taxpayer yet has the right to follow the fund raised by taxation to its final expenditure and there insist that each individual taxpayer shall benefit from the expenditure of the fund raised in proportion to the amount he may pay in taxes. If this were the law

no tax of whatever sort could stand for a moment. [Rolph v. City of Fargo, 42 L. R. A. 646.] Absolute equality of distribution of the benefits accruing from the expenditure of money collected by taxation is an Utopian dream. Instances of remediless inequalities fairly rush upon the view. The childless man of wealth may pay hundreds of dollars as school taxes, but having neither chick nor child to educate no visibly direct benefit accrues to him for his forced outlay. Money drawn from his pocket goes to defray the cost of feeding and housing law-breakers confined in penal institutions; yet he is neither fed nor housed by the taxes thus expended. The most that is humanly possible, and therefore all that may be demanded by either law or constitution, is equality in the imposition of the tax, and either direct or indirect benefit, but not an *absolute, visible and direct equality in the benefits* accruing from the expenditure of the money derived from taxation. At least no such failure to receive direct and visible benefits from moneys derived from taxes is demanded by the applicatory excerpt from section 1 of the Fourteenth Amendment, nor by our own Constitution which forbids the taking of private property for public use without just compensation—or just return in accruing benefits.

Of course, we are not saying that a citizen may be taxed for any sort of purpose and the taxes accruing be wasted for purposes not of general public benefit. But the very question connotes a public use, and such is concededly present here. No one will deny that the building of public roads and the betterment and repair of those now constructed is a public use of the utmost value and praiseworthiness. If this were not already ruled (State ex rel. v. Burton, 266 Mo. 711), it is yet so self-evident as not to require either proof or exposition. Neither our own

Constitution nor the applicatory part of section 1 of the Fourteenth Amendment to the Constitution of the United States (both of which are limitations upon power, the latter upon that of the States as wielded by the Legislature and the former upon the Legislature directly) forbids the levy of a general tax for public purposes, even though in expending the moneys accruing from such tax some individuals may not be directly and personally benefited. There can be no difference in the principle involved even though the case here is but a public road in a county but outside of an incorporated town, which road urban dwellers are taxed to maintain. What difference is there in principle between taxing a whole State to build good roads and that involved here of taxing a whole county?

In the case of Bauman v. Ross, 167 U. S. 1. c. 589, it was said: "But it is for the Legislature, and not for the judiciary, to determine whether the expense of a public improvement should be borne by the whole State, or by the district or neighborhood immediately benefited. The case, in this respect, comes within the principle upon which this court held that the Legislature of Alabama might charge the county of Mobile with the whole cost of an extensive improvement of Mobile harbor; and, speaking by Mr. Justice FIELD, said: 'The objection urged is that it fastens upon one county the expense of an improvement for the benefit of the whole State. Assuming this to be so, it is not an objection which destroys its validity. When any public work is authorized, it rests with the Legislature, unless restrained by constitutional provisions, to determine in what manner the means to defray its costs shall be raised. It may apportion the burden ratably among all the counties or other particular subdivisions of the State, or lay the greater share or the whole upon that county or

portion of the State specially and immediately bene-
fited by the expenditure.' [Mobile County v. Kim-
ball, 102 U. S. 691, 703, 704.]''

In the late case of Lamar Township v. Lamar,
261 Mo. l. c. 185, upon a state of facts rendering the
principle here involved practically identical there-
with, we took occasion to say: ''That is to say, the
taxing of the citizens of Lamar, a separate munici-
pality, for the benefit of Lamar township, would be to
require the citizens of Lamar to bear this burden
without securing any benefit. The court thinks that
counsel overlooks the fact that every citizen of Lamar
is a citizen of Lamar township and has the right to
participate in the administration of the affairs of the
township. The improvement of the public highways
is as important to the citizens of Lamar as the
citizens living outside of Lamar in the township, but
it is not true that the citizens of Lamar township are
citizens of Lamar, or have anything to do with or
control over, the administration of the affairs of the
city. The property-owners who choose to live in a city
or town, must bear the burden of taxation for the
support of the city government, as well as State,
county and township government. This may not seem
fair, but it is the law.''

So much has been said upon the respondent's
theory that building a road in a county between one
incorporated town and another is of no visible or
direct benefit to the urban dweller and taxpayer. Let
us consider if respondent's theory be in fact true.
It is obvious that so far from a lack of such benefit
accruing to the city dweller, it is present in equal
measure to that enjoyed by the rural dweller.

Where must a public road be placed so that A
may be said to be directly benefited by it? Must it
start from his door-step, or be at furthest in front
of his premises? If this were the test the majority

of the farmers and other rural residents would not be benefited and could logically be here complaining. The test is whether the municipal subdivision, to-wit, the county, is benefited by good roads. We have seen that the answer to this is in the affirmative. Since no sort of feasible system of public roads could be devised which would serve to put a public paved highway in front of the residence of every farmer, and obviate thus the necessary use by him of private or unimproved roads till he reaches the improved ways connecting these incorporated towns with each other, it is difficult to see wherein the urban dweller is in worse condition than the rural dweller. The farmer may construct a private way of ingress from his farm to the public paved highway which the road bonds here are to bring into being and use; likewise the urban dweller and his neighbors may construct ways of ingress to these roads and call them streets and alleys. Such paved or gravelled public roads will be built with this tax in front of the doors of many farmers, but manifestly not in front of the doors of all; such roads will be likewise built in front of the doors of many of these urban dwellers, but not of all. Obviously, the difference in the conditions of the two classes are not sufficient to make void this law upon such a ground. [In re Mingo Drainage Dist., 267 Mo. 268.] Besides, the contrary view assumes a wall to be built about an incorporated town which shuts it off from the surrounding county and its neighboring towns and villages; assumes that while the rural population of any given county has much use for roads to travel from country to town and to travel between towns, the urban dweller does not need or desire to issue forth from his corporate limits, or to go to other towns, or to travel into the country upon business or health bent. Such an assumption is an obvious false premise. A few poets

and some orators have given time and thought to a more or less beautiful expression of a wholly contrary view, which robbed of its oratorical tinsel and simply expressed is, to-wit, that while the rural regions may exist without towns, or cities, the city may not live without the country. History admonishes us that time was when there were no towns, and none was needed; how far the demands of complex society may have changed the rule, we need not inquire.

We think, however, upon no theory should this contention be upheld. We find no constitutional invalidity which will serve to render void a proper issue of road bonds under a proper election held pursuant to the act of March 19, 1907. [Laws 1907, p. 411.] The regularity of this election is, however, conceded. Touching the constitutional necessity of casting aside sections 4 and 5 of the act, which provide details for constructing roads and bridges, and the ensuing lack of such provisions to govern the construction of these improvements, it suffices to say, as forecast above, that there are probably to be found other provisions of the road law, under which such funds may be expended; or failing in these, the general statutory powers of the several county courts to make contracts on behalf of their counties may apply. But on this we do not pass, since it is not intimately involved here. Since, it is sufficient upon this phase of constitutionality *vel non* of the act to say that *there were such provisions in existence when the act here in question was passed.* Whether in the repeated repeal and re-enaction of the road law in 1909 (Laws 1909, p. 766), and in subsequent sessions of the Legislature, such provisions have been lost, we are not here called on to inquire.

VIII. Regardless of the constitutional goodness of the law under which the bonds offered for regis-

tration were issued, respondent contends that the two
issues proffered here for registra-
**Different**            tion ought not to be registered, be-
**Issues of Bonds**      cause (a) they are not of the de-
nominations fixed by statute, and
(b) because a fixed day of maturity, prior to which
they may not be called for payment, is set forth in
them.

In both these contentions we are compelled by
the terms of the act to acquiesce. The statute is
badly drawn, and loosely speaks of *one issue* of
bonds, which are required to have one-half thereof
of the denomination of $100. Beyond this expression
there is not a word in the act even remotely sustain-
ing the position of relators. No reason can be seen
why there should be more than one issue of these
bonds. Another part of the sections provides that
no more of said bonds shall be sold than is necessary
to construct the roads contracted for, or about so to
be. So far the above provision is not contrary to the
view of more than one issue. It is colorless in de-
termining whether there may be more than one issue
or not, and is equally as good in argument *pro* or
*con.* But the last part of the sentence and the sec-
tion seems to settle the question in favor of the view
that but one issue is contemplated. For it says that
"whenever any bond shall be delivered the county
clerk shall detach therefrom all matured interest cou-
pons." If more than one issue is allowed there would
be no matured coupons to be detached. But be this
as may be, no reason can be seen why the Legisla-
ture should have taken the trouble to enact that one-
half at least of one issue of bonds shall be in de-
nominations of one hundred dollars or less, if it is—
as it is on any other view, or on the view of relator
—easy to evade this provision by making one issue
of $20,000, as was here done and of issuing $2,980,000

of bonds in other denominations. It is just as easy and just as feasible to practically defeat this provision by making one issue to consist of a total of two hundred dollars, and thereunder issue one-half of such issue in denomination of one hundred dollars. Such a view (and to this conclusion the contentions of relators inevitably lead) renders the provision absurd; a thing, as the rules of construction admonish us to hold, the Legislature could not have had in mind. [State ex rel. v. Cook, 178 Mo. 189.] On the contrary, they doubtless believed that a provision compelling the issuance of bonds in such so-called popular amounts would be of advantage, either in the voting of the bonds, or in the sale thereof, or both.

If after assent given by the voters, these bonds may be issued in monthly series, at the arbitrary will of the county court, then it is obvious that they may be so issued in yearly series, and it follows that there is no limit to the power of the county court to subdivide the bonds voted, either in time or maturity or number, or denomination. So instead of paying off this bonded debt in twenty years, as the apparent intent of the Legislature was, it becomes possible to defer and extend such payment for twenty-five or thirty years. It is a plausible view that the Legislature, by the single loose expression "one issue," referred to the whole issue assented to at any one election, and that they did not contemplate many issues spread over a term of years beyond the statutory twenty. The privilege of paying in thirty or forty years, instead of twenty, might well induce a reckless creation of bonded indebtedness, since much of the burden of its discharge would then fall upon a distant posterity, after the roads which are built with the money shall have been ground to dust and blown away.

The ease with which the concrete facts show this provision can be, and has, in the instant case, been evaded, proves that the thought was in the mind of the Legislature that one-half of the road bonds issued pursuant to *one or any given assent of* the voters, should be in denominations of one hundred dollars or less, and so we hold.

Likewise it is obvious that a bond *"callable"* only after a fixed date, does not comply in this respect with a statute which expressly says that *"all bonds shall contain a provision that they are payable at any time within twenty years upon the call of the county."* We think that this proviso means what it says, and that a bond which expressly provides to the contrary is not entitled to registration. Certainly, the county court, at least, before they were confronted with an insuperable obstacle to following the letter of this statute in the two behalves mentioned, could not set up their judgment as to what was best or more expedient, or better economy, or better business against that of the Legislature.

When the present issue of bonds is cancelled and destroyed and a new issue made pursuant to law which complies with this statute, as to denominations thereof and date of optional payment, we see no reason why such new issue should be refused registration. But since the specified provisions of the instant issue are contrary to the plain letter of the law, no insuperable obstacle to following the law being shown, the respondent was right in refusing registry, and our alternative writ should be quashed. Let this be done.

All concur except *Woodson, C. J.,* and *Bond, J.,* absent.