THE STATE ex rel. CLAY COUNTY v. GEORGE E. HACKMAN, State Auditor.

In Banc, May 22, 1917.

1. **PUBLIC ROAD BONDS:** Maximum County Indebtedness: **Five Per Cent Limit:** Legislative Exercise. A county may incur an indebtedness in excess of five per cent of its assessed taxable wealth for the purpose of improving public roads in the county. By the amendment to the Constitution adopted in 1906 the theretofore existing maximum limit of five per cent upon the amount of county bonded indebtedness for road purposes, was removed; and Sec. 10520, R. S. 1909, enacted in 1907, Laws 1907, p. 411, authorized the exercise by the county of the constitutional power conferred by that amendment.

2. ———: Court Order: What Are Public Roads. The order of the county court containing a recital that the proceeds of the bond issue shall "be used for the improvement of the public roads of the county" is an essential prerequisite to a valid election under the Act of 1907; but the words "of the county," when compared with the rest of the act and the constitutional amendment of 1906, mean the public roads "in the county;" and since the word "road" is a generic term and includes highways and even streets, the proceeds of the bond sales may be used to improve public roads within unincorporated villages and towns which are connecting links between roads lying outside their limits, and also the roads lying within existing special road districts, and the court order may so declare. *Held,* by WALKER, J., dissenting, with whom FARIS, J., concurs, that a public road means a highway outside the corporate limits of a city or town, while a street means a highway within such limits; and when the term "public road" is used in a statute, a strict compliance with which is necessary to authorize the incurring of an added burden of taxation, it cannot be held to include streets within an incorporated city or town unless that purpose is expressed in the statute with particularity.

3. ———: Use on City Streets: A County Use. Proceeds from an issue of bonds by a county to improve the public roads in the county, under the constitutional amendment of 1906 and the Act of 1907, may be used in improving parts of city or village streets which form a part of the system of the public roads to be improved. The use of the fund for improving portions of the city streets that form connecting links in the connected system of public roads in the county is for a county use or purpose, and not a purely municipal purpose, and is vastly different from turning over a part of the fund to city treasuries to be used in improving streets. [Distinguishing State ex rel. Kirkwood v. County Court, 142 Mo. 575, and Green City v. Martin, 237 Mo. 1. c. 484; and disapproving *obiter dictum* in State ex rel. St. Louis County v. Gordon, 268 Mo. 743.]

> *Held*, by WALKER, J., dissenting, with whom FARIS, J., concurs, that the streets of an incorporated city or town are not within the purview of the Acts of 1907.

4. ———: ———: Control Over Fund. Whether the authorities of cities or existing special road districts have exclusive control over the streets and public roads within their respective territories, or whether the county court has authority to make the proposed improvements in the streets and roads therein, contemplated by the proposed county bond issue, does not affect the validity of the bonds, and is not for determination in adjudicating their legality.

> *Held*, by WALKER, J., dissenting, with whom FARIS, J., concurs, that in the absence of a statute specifically so providing, the county court has no authority to interfere with the care and maintenance of streets in incorporated towns or to extend aid to the municipality in the improvement of their streets.

## Mandamus.

WRIT ISSUED.

*Ernest G Simrall, Martin E. Lawson, Ralph Hughes* and *Craven & Moore* for relator.

(1) The amendment of 1906 is simply the removal of a limitation heretofore existing; it is not a grant of power, hence is necessarily self-enforcing, to the extent that it abolishes previous limitations, so that an act of the Legislature giving a county power to issue bonds for road purposes confers that power upon the county without any limitation. State ex rel. v. Duncan, 265 Mo. 41; Arnold v. Hawkins, 95 Mo. 569; State ex rel. v. R. R., 74 Mo. 163; St. Joseph Board v. Patton, 62 Mo. 444; State ex rel. v. Van Every, 75 Mo. 530; Evans v. McFarland, 186 Mo.

726; Sharp v. Biscuit Co., 179 Mo. 563; McGrew v. Railroad, 230 Mo. 518. (2)    The fact that the county court in its order calling the election, and afterward, provided that the proceeds of the bond issue would be expended on certain designated roads does not invalidate the election or make void the bonds. Morse v. Granite County, 119 Pac. (Mont.) 286; Louisville v. Park Commissioners, 112 Ky. 400; Yesler v. Seattle, 1 Wash. St. 308; Grumly v. Marietta, 132 Ga. 408; Santa Barbara v. Davis, 92 Pac. 308; Bell v. Shreveport, 127 La. 691; Swan v. Murray, 146 Ky. 148; Perkins County v. Graff, 114 Fed. 441; Railroad v. Merrick County, 24 Fed. 644; Wilson v. Pike County, 144 Ala. 397; State ex rel. v. Gordon, 217 Mo. 103. (3) Where the county court declared either in the order calling a bond election, or afterwards, that the proceeds of the bonds would be used on certain specified roads, and where such declaration was made in good faith, the bonds voted are valid, even if by reason of a legal impediment every portion of all the roads to be improved cannot be built. Authorities last above. (4)    Roads within the limits of special road districts are still "public roads of the county" upon which under Sec. 10522, R. S. 1909, the money derived from this bond issue may be spent and the "exclusive jurisdiction over roads given to these districts by the acts incorporating them is exclusive only for the purposes of their organization and does not and was not intended to preclude the county from improving roads therein under the power of the constitutional amendment and statute." General statutes which have a particular application inside the boundaries of political subdivisions prevail over general terms contained in the acts creating such subdivisions. Board of Education v. St. Louis, 267 Mo. 362; Peterson v. Railroad, 268 Mo. 488.

*James S. Simrall,* amicus curiae.

*Frank W. McAllister,* Attorney-General and *S. P. Howell,* Assistant Attorney-General, for respondent; *Theodore Emerson* and *R. E. Ward,* of counsel.

(1)    The county court has no authority to use county funds in paving city streets, and an election held for

said purpose was an unlawful election. The contemplated paving, under the order of the county court and the plat locating the roads, as alleged in the return and not denied, includes the paving of certain streets in seven municipal corporations, aggregating about five and one-third miles. State ex rel. v. Gordon, 188 S. W. 160; State ex rel. v. County Court, 142 Mo. 575; Lamar Township v. Lamar, 260 Mo. 182; Sec. 46, Art. 4, Constitution. (2) By express statutory provision, special road districts are invested with "sole, exclusive and entire control and jurisdiction over all public highways, bridges and culverts within the district." The contemplated paving, as alleged in the return and not denied, includes the paving of about 99 miles of public road within the eleven special road districts, over which the county court has no control or authority to expend county funds on such roads. Harris v. Bond Co., 244 Mo. 686; Sec. 10585, R. S. 1909; Laws 1913, p. 680, sec. 10615. (3) The county court ordered an election to authorize the voting of bonds for the purpose of constructing certain designated roads which ran through special road districts and incorporated cities and towns over which the county court has no authority or control and upon which they cannot expend county funds. The voters authorized the issuance of bonds to construct all the roads, as designated in the plat referred to in the petition and notice of election, and did not authorize the issuance of bonds which can be used only upon a certain portion of said designated roads. The county court cannot submit one program to the voters and then carry out a different program. Such course would be equivalent to the county court making a new, separate and distinct contract from that authorized by the people at the polls and one which the court has no means of knowing that they would have authorized. Thornburg v. District, 175 Mo. 31; State ex rel. v. Gordon, 223 Mo. 17. (4) The constitutional amendment to section 12 of article 10, adopted in 1906, provides that "a county may be allowed to become indebted" to a larger amount than the five per cent of the assessed valuation theretofore authorized, but the General Assembly has not, by any legislative

enactment, allowed this to be done. The decided cases announce the rule, that an exception which allows the incurring of a large indebtedness than that authorized by the original constitutional provision is not self-executing but requires further legislative authorization before such exception can become operative. Brooks v. Schultz, 178 Mo. 227; State ex rel. Baird v. Holliway, 66 Mo. 387; Public School v. Patton, 62 Mo. 449; State ex rel. v. Railroad, 74 Mo. 163; Arnold v. Hawkins, 95 Mo. 569. (5) Secs. 10520-24, R. S. 1909, under which this bond election was held, expressly limit the procedure provided therein to cases where the indebtedness to be contracted falls within the limit of the maximum indebtedness which the county, under the Constitution, may incur, while the election in this case was ordered and held for an amount in excess of said five per cent limit of maximum indebtedness, and was therefore ordered and held without authority of law. (6) Under the authority of Sec. 10618 (Laws 1913, p. 682) special road districts are authorized to issue road bonds, and at least one of said districts in Clay County has already issued bonds to the amount of $77,000 for the purpose of constructing public roads lying wholly within such districts. To permit the levying of an additional tax under the authority of Sec. 10520, R. S. 1909, upon the land lying wholly within such districts and for the purpose of constructing public roads amounts to double taxation and is in violation of the principle of uniformity required by constitutional provision and also results in a denial to the owners of property within such districts of the equal protection of the laws, as provided in section 3, article 10, Missouri Constitution, and section 1 of article 14 of the Constitution of the United States. (7) Since the enactment of Sec. 10594, R. S. 1909, as amended, Laws 1913, p. 675, and section 10616, all moneys collected for road purposes on land within special road districts must be turned over to be expended by and under the authority of the commissioners of such districts. The county court therefore has no authority to levy and collect taxes for road purposes on property within such

special road districts and this election therefore is invalid and without authority of law.

WILLIAMS, J.—This is an original proceeding in mandamus brought by the relator to compel the State Auditor to register a portion ($10,000) of a total $1,250,000 proposed public-road-bond issue of Clay County. The bonds, representing the sum of ten thousand dollars, were, upon presentation to the State Auditor, refused registration. Thereupon this proceeding was instituted. The issuance of the alternative writ was waived. The pleadings consist of relator's petition, respondent's return thereto, and relator's motion for judgment upon the pleadings. The bonds are attempted to be issued under authority of section 10520 et seq., Revised Statutes 1909.

There is no dispute about the facts, which may be stated substantially as follows:

On May 15, 1916, a petition, duly signed by one hundred taxpaying citizens of Clay County, was presented to the county court of said county asking that a proposition be submitted to the qualified voters thereof to bond said county in the sum of $1,250,000 for the purpose of grading, constructing and paving the public roads in said county. It also appears that at the time the petition, above mentioned, was presented to the county court the petitioners also submitted to the court a plat of said county showing the location of the roads proposed to be improved, together with an engineer's estimate of the cost thereof. This plat, which by stipulation of the parties, is now before us, as a part of the pleadings, shows a proposed connected system of rock roads designated to serve the needs of the whole county; the total mileage of the proposed roads being 202.3 miles. The plat shows the proposed roads as passing through several of the small incorporated towns and villages in said county, but stopping at the edge of the large cities of said county. About five and one-third miles of the proposed inproved roads are thus included within small incorporated towns, and serve as connecting links of the total mileage proposed to be improved. It also appears as an admitted fact

that about ninety-nine miles of said proposed improved roads are within the boundaries of certain designated special road districts of said county, and connect with the other roads to be improved.

On the day that the petition was filed the county court made an order that an election be held within forty-five days, to-wit, on June 24, 1916, for the purpose of submitting said issue to the qualified voters of said county. Said order sets forth that the county court finds that in order to improve said public roads of said county "as located on said plat" it would be necessary to bond the county in the sum of $1,250,000. The court then sets out in its order a list of the proposed improved roads, the amount of mileage of each proposed road and the estimated cost thereof as shown by the plat and estimate filed by the petitioners with their petition. Said order states the amount of the proposed bonds and that they should bear interest at four and one-half per cent. per annum from the date of issue. Said order contained the further statement: "It is further ordered by the court that the proceeds of the sale of said bonds are to be and shall be used for the improvement of *the said public roads* of said Clay County, Missouri, by grading, constructing and paving same with macadam surface *as petitioned for* and that the proceeds derived from the sale of said bonds *shall be expended on each of the aforesaid roads* in proportion to the estimates on said roads unless such road is graded as planned therein for a smaller amount."  (Italics ours).

The order also states that "the debts of said Clay County, Missouri, for said purpose do not equal the maximum indebtedness said county of Clay, under the Constitution, may incur."

Notice of said election was given as required by section 10520, Revised Statutes 1909. Said notice among other things recites that the proceeds of said bonds were to be used "for the purpose of grading, constructing and paving with macadam surface about 202.3 miles of the public roads of Clay County, Missouri, as fully shown by map and estimate now on file in the office of the Clerk of

the county court and as set out in the order of the court above mentioned.''

The election was duly held and the vote was taken by proper ballot and the vote was properly tabulated and certified and spread upon the records of said county court, showing that the proposition ''for increase of of county indebtedness in the sum of $1, 250,000'' carried by a vote of more than two-thirds of the qualified voters of said county voting at said election. No question is raised concerning the form of the bonds now sought to be registered.

The assessed taxable property of Clay County is admitted to be approximately $15,000,000.

I.   It is contended by respondent that Clay County is without authority of law to incur a bonded indebtedness in excess of five per cent of its assessed taxable property,

Maximum Indebtedness. for the purpose of improving public roads in said county, and that, therefore, said bond issue of $1,250,000, which exceeds five per cent of its assessed taxable property (approximating $15,000,000), is illegal.

We are unable to agree with this contention.

It is true as stated that the proposed issue of bonds does exceed five per cent of the assessed taxable property of said county.

However, at the general election in November, 1906, by vote of the people of the State, section 12 of article 10 of the Missouri Constitution was amended by inserting, after the word ''jail'' in line 13, the following: ''or for the grading, construction, paving or maintaining of paved, gravelled, macadamized or rock roads and necessary bridges and culverts therein.''

By this amendment the theretofore existing constitutional five-per-cent limit upon the amount of county bonded indebtedness for road purposes was removed. This much is conceded by respondent but he further contends that the constitutional amendment is not self-enforcing, and that the General Assembly, prior to the calling of the election for this bond issue, had passed no act which

would authorize the exercise by the county of this enlarged power; that Section 10520, Revised Statutes 1909, does not so authorize the county.

Said Section 10520 was enacted in 1907 (Laws 1907, p. 411), the first General Assembly after the adoption of the above constitutional amendment, and is as follows:

"Whenever a petition, signed by one hundred tax-paying citizens of any county in this State, shall be presented to the county court thereof, asking that a proposition be submitted to the qualified voters of the county to bond the county for the purpose of grading, constructing, paving or maintaining paved, graveled, macadamized or rock roads or necessary bridges and culverts in said county, it shall be the duty of said county court to order that an election be held, within forty-five days after making said order, to determine whether or not the bonds of said county shall be issued and sold and the proceeds thereof used for any of such purposes, unless the debts of the county for said purpose already equal the maximum indebtedness said county, under the Constitution, may incur. Said order shall contain the amount of bonds it is proposed to issue, the rate of interest they are to bear, the date of the election, and a recital that the proceeds thereof are to be used for the improvement of the public roads of the county. Notice of such election shall be given by publication in at least two newspapers of the county, said notice to be published once a week in four separate issues of each of said papers prior to said election."

This point, in a somewhat different form, was urged in the recent case of State ex rel. St. Louis County v. Gordon, 268 Mo. 713, 188 S. W. 160; but the court properly held that the point was not there presented because (among other reasons) the proposed issue of bonds in that case did not exceed the five per cent of the assessed taxable wealth of St. Louis County. But here the point is involved, for the reason that, as above stated, the proposed issue exceeds five per cent of the assessed taxable wealth of Clay County.

Respondent contends that the phrase "unless the debts of the county for said purpose already equal the

maximum indebtedness said county, under the Constitution, may incur," used in Section 10520, supra, means that the county may become indebted for road purposes to the five-per-cent limit of other indebtedness mentioned in the Constitution, but does not give authority to go beyond that limit. It is difficult to conceive any real purpose which the Legislature intended to accomplish by the insertion of said clause. How the county could ever equal *for road purposes* the maximum indebtedness fixed by the Constitution, when the Constitution fixes no maximum indebtedness for *such purpose,* we are not told, and for ourselves have been unable to ascertain. But even though respondent's contention were sound, yet the above clause would not act upon the facts of this case. It will be noted that Section 10520, supra, authorizes the county court to act "unless the debts of the county *for said purpose already equal*" the constitutional limit. There is no showing in this case that the roads debts of Clay County "already equal" any amount. It is the opinion of the writer that, in all probability, no useful application will ever be found for the above quoted portion of said section. As to that, however, we do not now determine, but must content ourselves with passing only upon the point as here involved.

We, therefore, hold that Section 10520 is sufficient in its terms to authorize said county court, under the facts here presented, to submit for the approval of the voters the proposed amount of bonded indebtedness.

II.    It will be noted that Section 10520, supra, provides, among other things, that the order therein required to be made by the county court shall contain "a recital that the proceeds thereof are to be **Court Order:** used for the improvement of the public **Roads in** roads of the county." That a recital, at **Villages and** **Special Districts.** least, to that effect is an essential prerequisite to a valid election, under said act, we entertain little doubt. At least all will agree in saying that if the order should contain a recital to the effect that the proceeds are to be used for some purpose

*other than* the improvement of the public roads in the county a valid election could not be held. By way of example, if the order should recite that the proceeds or a part thereof were to be used for the purpose of building a private road, all would agree in saying that the order was fatally defective. If, on the other hand, the county court had contented itself with merely following the language of the statute, all would agree in saying that the order was good. The county court, however, did not content itself with following the exact language of the statute, but it recited in said order that the proceeds are to be used for the improvement of *"said* public roads of said county" and the word "said" by the language of the order itself clearly refers to the roads shown by the plat presented by the petitioners and now on file with the county clerk, a copy of which, by stipulation, is now before us.

As mentioned in the statement of facts the roads proposed to be improved, as shown by the plat, include a total of five and one-third miles of roads within several small incorporated towns or villages in said county, which mileage supplies connecting links for the rural roads approaching and passing beyond said incorporated villages; and also ninety-nine miles of road lying within the boundaries of certain designated special road districts. So that in effect, at least, said order recites that the proceeds of said bond issue are to be used in improving approximately ninety-eight and two-thirds miles of public roads in said county lying without any incorporated town or city or special road- district, ninety-nine miles of public roads in said county lying within special road districts and the said five and one-third miles of public road in said county passing through certain specified small incorporated towns or cities, all of said roads forming a connected system of county highways or roads.

If then the above mentioned short sections of proposed improved roads running through the incorporated cities and towns along the route of the proposed improvement and sections of said proposed improvement

lying within the designated special road districts are "*public roads,*" within the meaning of the Constitution and act authorizing said bond issue, the order of the county court was not defective and registration of the bonds should not for that reason be denied. If, on the other hand, said portions of the proposed improvement are not "public roads," within the meaning of said constitutional provision and act, then the order was defective and there would be no warrant for now registering said bonds. A solution of the question, therefore, will be found to depend upon the definition which shall be given the term "public roads" as used in said act.

Webster's New International Dictionary, title "Road" says: "Road is generally applied to highways, but has a broader, generic sense including highways, street, lane, etc."

In 37 Cyc. 16, the following definition is given: "In its broadest sense the term 'road' is synonymous with 'way' and thus applies to any place set apart and appropriated, either *de jure* or *de facto,* for the purpose of free passage, whether by public authority or by the general license or permission of the owners of the land, and also to private ways. More commonly in legal acceptation the term 'road' is regarded as synonymous with 'highway.' It is said to be a generic term for all kinds of ways, and thus includes highways, streets, alleys and lanes," citing many authorities.

"As a generic term it [road] includes highway, street, and lane." [24 Am. & Eng. Ency. Law (2 Ed.), 986.]

The term "road" or highway has been many times construed to include city streets as well as rural roads. [Abbott v. Duluth, 104 Fed. 833; Northwestern Telephone Exch. Co. v. City of Minneapolis, 81 Minn. 140; Chamberlain v. Iowa Telephone Co., 119 Iowa, 619; Sanderson v. Texarkana, 103 Ark. 529; Brace v. N. Y. Central R. R. Co., 27 N. Y. 269; St. Louis v. Realty Co., 259 Mo. 126, l. c. 134.] Many other cases might be cited to the same effect. A review of the authorities will disclose that the proper definition of the term "road" in an instant case depends

upon the legislative intent as revealed by the context of the act wherein the term is used.

It was the undoubted purpose of the above mentioned 1906 amendment of our Constitution to provide a way whereby counties might be authorized to raise, by bond issue, supported by a tax upon all the property in the county, funds of sufficient amount to enable the county to construct a connected system of modern roads throughout the county. This amendment is but in keeping with the general public desire for improved road conditions brought about, no doubt, by the improved facilities for travel and a fuller realization of the idea that the development or progress of the State or county is dependent in a large measure upon the amount and character of its highways.

The constitutional amendment, above mentioned, provides that the county may be allowed to become thus indebted for the purpose of constructing or improving the roads, etc., "therein." Section 10520 et seq., which undertook to put into operation this additional power, provides that one hundred taxpaying citizens may petition the county court asking that a proposition be submitted to the qualified voters to bond the county for the purpose of improving the roads, etc., "in said county." Later in that act the term "public roads of said county" is used, but the term "of the county" as used does not, we think, materially limit the meaning of the term "in the county," theretofore used in said section, and in the constitutional amendment.

We have seen above that the term "public road" is sufficient in its scope to include "city street," and that such a construction may be given it if it is consistent with the true intent of the act.

Was the purpose and intent of the constitutional amendment and subsequent legislative enactments, in enabling the raising of such large funds for the purpose of building an improved county system of connected modern roads, to provide only for improving rural roads and to make no provision for providing funds for insuring an equally good improvement upon those small connecting

links of road lying within the incorporated towns or cities along the routes of those cross-county roads? Or was it the intention that provision should be made for raising funds for a uniform connected system of improved highways so that the same might (if condition required) be made free from small stretches of mud holes or unimproved roadways where the same passed through such towns and cities? That the latter intention is certainly consistent with the purposes sought to be subserved is, we think, very apparent. To hold otherwise would be to apply retrogressive construction to progressive legislation. Courts cannot make laws, neither should they unmake them; but whenever permissible and consistent with sound rules of construction should allow that construction which is in keeping with the purpose sought to be obtained and not inconsistent with the progress of the times.

We, therefore, hold that the roads specified by the county court in its order are "public roads" within the meaning of said act and the constitutional amendment authorizing the same, and that the order of the county court was not defective in that regard.

III.   We are aware that the conclusion above reached does in a measure conflict with some of the language used in a portion of paragraph V of the recent case of State ex rel. St. Louis County v. Gordon, 268 Mo. 713, 188 S. W. 160, 1. c. 165, wherein it was, in effect, said that proceeds from a bond issue, authorized under the above statute, could not be used upon the streets of an incorporated city and that said cities could not share in it. Upon a careful reexamination of that opinion, it does not appear that the exact point here discussed was properly lodged in that case, but that what was said thereon was, strictly speaking, *obiter dictum,* in response to an earnest request upon the part of *amici curiae.*

Upon a reconsideration of the question we have reached the conclusion that the language therein employed is too broad. What was there said was based upon and apparently intended as in harmony with the rule announc-

*Use of Fund to Improve City Streets.*

ed in the cases of State ex rel. Kirkwood v. County Court, 142 Mo. 575, and Green City v. Martin, 237 Mo. 1. c. 484.

With the holdings in those two cases, and the approval thereof in the recent case to which reference is above made, we now find no fault, but only undertake to say that they are, strictly speaking, not applicable to the issue now before us. The case of State ex rel. Kirkwood v. County Court, supra, held that a statute which undertook to authorize the county courts to pay out of the county's road and bridge fund a certain per cent thereof to the city treasurers of incorporated towns to be, by said municipalities, spent generally upon its roads and streets, was unconstitutional, because in violation of the constitutional inhibition against grants of public money to a municipal corporation.

In the case at bar, we are not dealing with a statute which makes a grant of public money to a municipal corporation but with a statute *expressly authorized by the Constitution* and which puts into operation a constitutional provision whereby money may be raised to build a connected system of public roads in the county. The fact that a portion of this fund as authorized is for the purpose of improving portions of city streets over which parts of said proposed improved roads run does not violate the constitutional provision against grants to a municipal corporation, but rather may be said to be in complete harmony with the Constitution, as amended in 1906, and under the plan contemplated the use of a part of the money in improving city sections of the proposed improved roads is for a county use or purpose (at least a *quasi*-county use or purpose), as contradistinguished from a purely municipal use, as would be the case were the fund to be turned over absolutely to the municipality to be used as it might direct in purely local and general municipal street improvement. We think there is a vast difference between turning over a county fund to a municipal corporation to be spent as the municipality might direct for purely municipal functions (which was held in the above case would not be lawful), and the use of parts of the authorized county fund here involved, for

improving small portions of city streets that are used to form connecting links in, or small sections of, a connected system of public roads of the county (which we now hold, in this case, to be permissible and lawful).

The case of Green City v. Martin, supra, held that the township trustees of a county under township organization could not be compelled, by mandamus, at the instance of an incorporated city lying within such township, to turn over to said city a portion of said township's special road-and-bridge fund raised by taxation in 1909 under authority of the constitutional amendment of 1908 (now section 22 of article 10 of the Constitution), because at the time said taxes were levied and became due there was no statute which authorized such division of said taxes. That decision cannot be considered as in point here, and does not, we think, in any manner, conflict with the conclusions reached above.

As expressly stated in the opinion, it was from the viewpoint of the two above cases that the above mentioned discussion was made in State ex rel. St. Louis County v. Gordon, supra.

In so far, therefore, as the case of State ex rel. St. Louis County v. Gordon held that a county fund could not be granted to a municipality, we think the holding is correct; but in so far as it may be said to express the thought that a portion of the proceeds of bond issues as here involved cannot be used for improving portions of city streets *which form connecting links in a county system of roads,* we are of the opinion, for the reasons stated in paragraph II above, that such view is an erroneous one and should not be followed.

IV. We have not overlooked the argument by respondent urging, as a ground against the registration of said bonds, the point that the city and special road district authorities are said to have the exclusive control over the streets and roads within their respective territories and that, therefore, the county court is without authority to make the proposed improvements within cities and special road districts. But

Control of Funds.

270 Mo.—43

we do not here determine that point, for the reason that we are of the opinion that the determination of that question is not here involved. The issue raised by this proceeding have to do solely with the validity of the bonds proposed to be issued and now presented for registration with the State Auditor.

The question as to who will supervise the proposed improvements cannot affect the validity of the bonds. That is a matter that can arise only after the bonds are issued and the money is ready for the expenditure and not here where we are concerned merely with the question of raising the money.

We may be pardoned for an expression *obiter dictum* to the effect that it would indeed be a peculiar situation if it should not be found that someone had the authority, at least the implied authority, to see that an authorized fund was applied to the legitimate purposes of its creation, and that we anticipate little difficulty will be encountered in applying the fund to the accomplishment of this end.

From the foregoing conclusions, it follows that our permanent writ of mandamus should issue herein. It is so ordered. *Graves, C. J., Woodson* and *Blair, JJ.,* concur; *Bond, J.,* concurs in paragraph two and in the result; *Walker, J.,* dissents in separate opinion; *Faris, J.,* dissents, and concurs in separate opinion by *Walker, J.*

WALKER, J. (dissenting).—I do not concur in the conclusion reached in the majority opinion that the streets of an incorporated city or town are within the purview of section 10520, Revised Statutes 1909, and hence may be included as a part of the system of public roads of a county authorized to be improved by a compliance with said statute. It may be admitted, in general parlance, that a public road may include a street; but when either term is used in a statute, a strict compliance with which is necessary to authorize the incurring of an added burden of taxation, more particularity is not only necessary but is, so far as I have been able to

ascertain, uniformly employed. Under the terminology of our statute, without unnecessarily burdening this dissent with illustrations, of which many will be found, a public road means a highway outside of the corporate limits of a city or town, while a street means a highway within such limits. That this is true is evident, not only from the distinctive statutory use of the terms, but from the fact that upon the incorporation of a municipality it becomes, so far as its autonomy and all that pertains thereto is concerned, a separate entity. Not only its government, but, as one of the incidents of such government, its maintenance, must be provided for by those within its borders. Not the least of these is the care and maintenance of its streets. In the absence of a specific statute so providing, it has no authority to expect, demand or receive aid from the county in discharging any of its municipal duties. Nor has the county court, a purely administrative body charged with the management of the county's business by express statutes, any authority to extend such aid or in any way interfere with the conduct of the affairs of any such municipality. I am therefore of the opinion that the term "public road" as used in the statute (Sec. 10520, supra) was not contemplated or intended to include the streets in an incorporated city or town; and, if such inclusion were permissible, that no authority is conferred upon a county court to expend any part of the funds arising from the issuance and sale of bonds under the statute cited, in the improvement of the streets of such a municipality. It may be contended that this statute is largely remedial. Let this be granted. Under no rule of interpretation can the meaning or application of a statute, remedial or otherwise, be so extended as to authorize those charged with its enforcement to exercise power where they have no jurisdiction. A county court has none to improve the streets of an incorporated city or town, and it was not so intended by the framers of the statutes.

*Faris, J.,* concurs.