GEORGE B. KROEGER ET AL., (Plaintiffs) Appellants, v. ST. LOUIS COUNTY, a Political Subdivision, ET AL., (Defendants) Respondents, CITY OF UNIVERSITY CITY, a Municipal Corporation, (Defendant) Appellant.—No. 40381.—218 S. W. (2d) 118.

Division Two, February 14, 1949.

Rehearing Denied, March 14, 1949.

*Calhoun & Boisseau* and *Marvin E. Boisseau* for appellants.

*Erwin F. Vetter,* County Counselor of Clayton, for respondents.

[118] TIPTON, P. J.—This is an action to determine title to a narrow strip of land in University City, known as Forsythe Boulevard. The judgment of the trial court was in favor of St. Louis County.

For the purpose of establishing and constructing a county-wide connecting and integrated road system, the respondent, St. Louis County, issued road bonds in the amount of ten million dollars after this bond issue had been authorized by a county-wide election in April, 1928.

In establishing this connecting county highway system it was necessary to locate and construct connecting routes through several of the municipalities of the county. In laying out and establishing the north and south route it was necessary to traverse through the cities of Webster Groves, Brentwood, Clayton and University City. The strip of land in question was condemned by the respondent county in 1932 at a cost of more than $14,000, which cost was paid out of the bond issue, and the total amount expended by the respondent county out of this bond issue was $43,211.85. This connecting unit or section of roadway did not follow the line of any existing street but was a new connecting road running from a point in the southeast part of University City in a northwest direction.

On February 14, 1946, the Board of Aldermen of University City enacted an ordinance vacating the highway easement over this strip of ground from the north line of Gannon Avenue to the intersection [119] of Old Bonhomme and McKnight Roads on the north and west. The individual appellant owns a lot adjacent to the part of the highway which the city sought to vacate by this ordinance.

The county-wide connecting highway system has been improved in sections or segments extending over a period of years. The strip of land in question has not as yet been paved.

Appellant University City is a city of the fourth class and was incorporated in 1906. It joins the individual appellants by admitting the allegations of their petition and joins in their prayer asking that the ordinance be adjudged a valid and complete vacation of the easement described in the petition. The trial court held the ordinance invalid.

In this case we do not have any question of the appellant city's police power to control the traffic on the highway in question. The respondent county in its brief concedes the city has such power. Nor does this case involve a highly already constructed and taken in the city limits because the city has extended its limits.

The respondent county relies upon section 8608, R. S. Mo., 1939. Section 8608, Mo., R. S. A. The pertinent parts are as follows:

"The proceeds of all bonds sold shall be paid into the county treasury and shall be used for the grading, construction, paving or maintaining of paved, graveled, macadamized or rock roads and necessary bridges and culverts in said county and for no other purpose whatever, and the proceeds of such bonds shall be kept in a separate fund to be known as the 'road construction fund.' If, in the construction or improvement of any road between two given points in the county it becomes necessary to make or use any street or streets in any incorporated city or village or any road or roads in any incorporated road district as a part of said road, then such street or streets or road or roads may be constructed or improved and the cost thereof may be paid out of the proceeds of the sale of said bonds."

■ The appellants contend that this section does not give the respondent any power to make a new road within the corporate limits of a city, but only the right to improve existing streets; also, that since the appellant city is a city of the fourth class, it has the power under sections 7197 and 7212, R. S. Mo., 1939, to vacate any street or highway within its corporate limits.

Section 8608, supra, gives the county the power to "make" a street or road in any incorporated city or village and to pay for the same out of the proceeds of the sale of the bonds. Certainly the word "make" implies the authority to construct or build. And that is exactly what the respondent did in this case.

■ Appellants contend that such construction would be unconstitutional. They say in their brief: "This statute [section 8608] was first enacted in 1917. Prior to its enactment the Court on more than one occasion had held that the County Court could not expend County funds on the improvement of City streets. This was on the theory that the County had no control over such streets," citing State ex rel. St. Louis County v. Gordon, 268 Mo. 713, 188 S. W. 160; and Green City v. Martin, 237 Mo. 474, 141 S. W. 879. The Gordon case approved the ruling in the Martin case and was not based upon control of the street but held that it violated the constitutional provision against grants to a municipal corporation. However, the Gordon case was overruled in the case of State ex rel. Clay County v. Hackmann, 270 Mo. 658, 195 S. W. 706, l. c. 710, wherein we said:

"In so far, therefore, as the case of State ex rel. St. Louis County v. Gordon held that a county fund could not be granted to a municipality, we think the holding is correct; but, in so far as it may be said to express the thought that a portion of the proceeds of bond issues as here involved cannot be used for improving portions of city streets which form connecting links in a county system of roads, we are of the opinion, for the reasons stated in paragraph II above, that such view is an erroneous one and should not be followed."

The Hackmann case holds also that the term "road" or "highway" includes city [120] streets as well as rural roads, in construing sec-

tion 10520, R. S. Mo., 1909; which section was similar to section 8608, supra. In speaking of section 10520, supra, the opinion says:

"In the case at bar we are not dealing with a statute which makes a grant of public money to a municipal corporation, but with a statute expressly authorized by the Constitution, and which puts into operation a constitutional provision whereby money may be raised to build a connected system of public roads in the county. The fact that a portion of this fund as authorized is for the purpose of improving portions of city streets over which parts of said proposed improved public roads run does not violate the constitutional provision against grants to a municipal corporation, but rather may be said to be in complete harmony with the Constitution, as amended in 1906, and under the plan contemplated the use of a part of the money in improving city sections of the proposed improved roads is for a county use or purpose (at least a quasi county use or purpose), as contradistinguished from a purely municipal use, as would be the case were the fund to be turned over absolutely to the municipality to be used as it might direct in purely local and general municipal street improvement. We think there is a vast difference between turning over a county fund to a municipal corporation to be spent as the municipality might direct for purely municipal functions (which was held in the above case would not be lawful), and the use of parts of the authorized county fund here involved, for improving small portions of city streets that are used to form connecting links in, or small sections of, a connected system of public roads of the county (which we now hold, in this case to be permissible and lawful)." Loc. cit. 709-710.

There can be no doubt that a county does have the power in the construction or improvement of any road between two given points in the county to make a street in an incorporated city, when such street is a part of the county highway system, under section 8608, supra. Therefore, we hold that the respondent had the power to construct Forsythe Boulevard in University City.

Do sections 7197 and 7212, supra, give appellant city the power to vacate Forsythe Boulevard? Section 7197, in part, reads: "Cities of the fourth class shall have and exercise exclusive control over all streets, alleys, avenues and public highways within the limits of such city." Section 7212, in part reads: "The board of aldermen shall have power to create, open and improve any public square, public park, street, avenue, alley or other highway, old or new, and also to vacate or discontinue the same whenever deemed necessary or expedient: Provided, that all damages sustained by the citizens of the city or the owners of the property therein shall be ascertained as prescribed in that portion of this article relating to the condemnation of private property for public use."

934

The land for Forsythe Boulevard was condemned by the respondent for the purpose of building a connecting highway system and paid for with county funds. In the case of State ex rel. Russell, et al., v. State Highway Commission, 328 Mo. 942, 42 S. W. 2d 196, l. c. 204, we said: "The fact that a road of a state highway system goes through a municipality does not make it the property of the municipality." It is equally true under the facts of this case that Forsythe Boulevard is not the property of the appellant city.

Sections 7197 and 7212, supra, are dealing with streets and highways owned by a city and not county or state roads that run through a city. "The fact that a roadway over which the public has a permissive use, but which is being maintained and controlled by some one other than the city, . . . is within the corporate limits of the city does not make it a street of the city." Duckworth v. City of Springfield, 184 S. W. 476, l. c. 478, 194 Mo. App. 51.

From what we have said it follows that the respondent city did not have the power to vacate Forsythe Boulevard and that the judgment of the trial court should be affirmed. It is so ordered. All concur.