SAFEWAY, INC., Appellant,

v.

STATE of Alaska, DEPARTMENT OF TRANSPORTATION AND PUBLIC FACILITIES, Appellee.

No. S–9009.

Supreme Court of Alaska.

Nov. 2, 2001.

Michael W. Price, Sabrina E.L. Fernandez, Price & Price, Anchorage, for Appellant.

Susan L. Urig, Assistant Attorney General, Anchorage, Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and BRYNER, Justices.

## OPINION

MATTHEWS, Justice.

## I. INTRODUCTION

After being dedicated to the public, a strip of land is accepted by the local government as a public street and later included on a highway right-of-way map by the State of Alaska. When the local government subsequently vacates the street, does the State retain an interest in the land? Because the State accepted the dedication by mapping the land as part of a highway right-of-way, and because local governments do not have the power to vacate the State's rights in land acquired for highway purposes, we conclude that the local government's action did not vacate the State's interest in the land.

## II. FACTS AND PROCEEDINGS

In 1951 Hubert McCutcheon acquired a 120-acre parcel of land south of Tudor Road in Anchorage. McCutcheon and his wife deeded the western portion of their land to Modern Electric in 1959. The McCutcheons and Modern Electric then jointly conveyed a sixty-foot-wide strip of land running 2,607 feet along their common boundary "unto the public at large [as] a permanent easement and right-of-way for use by the public as a public road." [1]

In 1963 the McCutcheons deeded most of the land they had retained (the eastern portion of the original property) to Calais Company, Inc. ("Calais"). In 1964 the Greater Anchorage Area Borough approved plat number 64-50, which subdivided a portion of

---

1. *See* Illustration C attached as Appendix A.

the Calais property and noted the "existing 60' street" along its western edge, now called Becharof Street. In 1967 the Borough approved plat number 67–136, which subdivided more of the Calais property and again noted the existence of Becharof Street.

In the 1960s the State of Alaska's Department of Highways began work on the design of the New Seward Highway. Becharof Street lay within the State's right-of-way, as designated on the Highway Department's right-of-way map.[2] To fill out the remainder of the designated right-of-way, the State acquired most of Modern Electric's property, including all the land bordering the west side of Becharof Street. From Calais, the State acquired two pieces of land bordering the east side of Becharof Street: the southwest corner of the Calais property and the northwest corner. The triangular piece of land in the northwest corner was acquired for a planned interchange between Tudor Road and the New Seward Highway. Maps recorded with the declarations of taking showed Becharof Street included within the State's right-of-way.

Acknowledging that Becharof Street lay within the State's right-of-way, Calais received permission to construct and maintain a roadway along Becharof Street. The City of Anchorage also acknowledged the inclusion of Becharof Street within the State's right-of-way, and agreed to subordinate its utility easements to the State's interest in the right-of-way and move its power lines. Although the subordination agreement, like the State's declarations of taking, was recorded in the late 1960s, the State did not record the actual right-of-way map for the New Seward Highway until 1988.

In 1983 Stephen Noey (apparently a lessee of Calais) petitioned the Municipality of Anchorage[3] to vacate part of the northern portion of Becharof Street.[4] The State Department of Transportation initially indicated that it would not oppose the vacation, but amended its response on March 2, 1983, to note that the vacation request would "be denied by [the Department] pending the definition of a project to upgrade the Tudor Interchange." The Municipal Platting Authority did not receive the State's amended response until March 4. The previous day the platting authority had passed a resolution approving the vacation of Becharof Street.

Although the Department of Transportation reiterated its opposition to the planned vacation, the Municipal Assembly nonetheless passed an ordinance conveying and relinquishing the Municipality's "interests in the [sixty-foot] right-of-way [along the west property line of Tract 2, Bancroft Subdivision, Addition No. 1] to those parties receiving the benefits of the said vacation under the terms of AMC 21.15.130." The conveyance was to be "accomplished by, and effective upon, the recording of the approved final plat depicting the subject vacation in accordance with the requirements of the subdivision regulations." Plat 84–221, which depicted the vacation, was recorded in 1984.

In 1996 a representative of Safeway, Inc., met with Keith Morberg, a representative of the Department of Transportation. Safeway planned to lease Tract 2 of Bancroft Subdivision, Addition No. 1. Believing that Becharof Street had been vacated (and had thus reverted in part to Calais), Morberg indicated that the Department of Transportation would probably be willing to sell the now-isolated adjoining state-owned section of land in the far northwest corner of the (former) Calais property. Safeway ultimately entered into a long-term lease with Calais for the Bancroft Subdivision property.

When the Department of Transportation researched title to the land, however, it discovered that the vacation of the Municipality's interests in Becharof Street might not have eliminated the State's easement over the land. Safeway then filed this action against the State seeking to quiet title to Becharof Street. The trial judge granted summary judgment in favor of the State,

---

2. *See* Illustration G attached as Appendix B.

3. The Municipality of Anchorage is the entity that was created when the Greater Anchorage Area Borough and the City of Anchorage merged.

4. The property vacation is reflected in Illustration I, attached as Appendix C. For simplicity's sake this is usually referred to in this opinion as Becharof Street.

concluding that the State had taken over control of the easement granted "to the public" by including it within the New Seward Highway right-of-way, that the Municipality of Anchorage lacked the power to vacate the State's interest in the property, and that Morberg's comments did not estop the State from claiming an interest in the Becharof Street easement. Safeway appeals.

## III. STANDARD OF REVIEW

■ In reviewing a grant of summary judgment, this court "must determine whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law."[5] All reasonable inferences of fact must be drawn in favor of the non-moving party.[6] The trial court's decision on a motion for summary judgment may be upheld "on any ground which, as a matter of law, would support the result reached."[7]

## IV. DISCUSSION

A. *Did the State Lose Its Interest When Becharof Street Was Vacated by the Municipality?*

■ The basic dispute between the parties is whether the State lost its interest in the land when Becharof Street was vacated by the Municipality. Safeway argues that Becharof Street was vacated by the Municipality's action in 1983 because Alaska law gives municipalities the exclusive power to vacate streets. The State contends that Alaska law

gives the Department of Transportation authority over the highway system, and that the Municipality did not have the power to divest the State of its interests in a highway right-of-way.

■ Safeway's argument that a municipality has exclusive power to vacate a street is unavailing if the State acquired a right-of-way that included the street. While Alaska law permits city streets to be vacated with the consent of the city council,[8] land or rights in land acquired for State highway purposes can only be vacated by the Department of Transportation and Public Facilities.[9] If the State had acquired a right-of-way over Becharof Street for the New Seward Highway, then the State's right-of-way would not have been eliminated when the Municipality abandoned its rights to Becharof Street.[10]

■ The parties do not dispute that the Municipality accepted the dedication of Becharof Street. The question is whether the State also accepted the dedication, and thus acquired its own right-of-way over the land. Title 19, governing state highways, does not provide a specific procedure for accepting a dedication of land. Instead, it provides the Department of Transportation with general authority to acquire rights-of-way for present or future use.[11] This court has previously considered the circumstances under which the State can accept a dedicated street, however, and has held that the State may accept

---

5. *Saddler v. Alaska Marine Lines, Inc.*, 856 P.2d 784, 787 (Alaska 1993).

6. See *Keener v. State*, 889 P.2d 1063, 1065 n. 2 (Alaska 1995).

7. *Carlson v. State*, 598 P.2d 969, 973 (Alaska 1979).

8. See AS 29.40.140(b) ("Vacation of a city street may not be made without the consent of the council.").

9. See AS 19.05.070(a) ("The department may vacate land, or part of it, or rights in land acquired for highway purposes, by executing and filing a deed in the appropriate recording district.").

10. See *Kroeger v. St. Louis County*, 358 Mo. 929, 218 S.W.2d 118, 120 (1949) (holding that statute

giving city authority to vacate street applies to streets and highways owned by city and does not apply to county or state roads that run through city). *Cf. State Highway Dep't v. MacDonald*, 221 Ga. 312, 144 S.E.2d 363, 367 (1965) (holding that state highway department has full control over state highway system, including right to close county roads where necessary); *Curtis v. Board of Sup'rs of Clinton County*, 270 N.W.2d 447, 449–50 (Iowa 1978) (holding that only department of transportation, not local board of supervisors, has authority to alter or vacate any highway crossing in its system); *Ex parte Com., Dep't of Highways*, 291 S.W.2d 814, 815–16 (Ky. 1956) (holding that Department of Highways has power to take over any county road and make it a part of the state primary road system, and having done so, may by its own order discontinue such road).

11. AS 19.05.040(4).

land dedicated to the public "through a formal official action." [12]

By including Becharof Street on the right-of-way map that served as the basis for the acquisition of the right-of-way for the New Seward Highway, the State engaged in "a formal official action" showing that it was assuming control over the land for highway purposes.[13] The City of Anchorage acknowledged the State's assumption of control over the right-of-way by subordinating its utility easements to the State's interest as shown on the right-of-way map. So did Calais, the owner of the land underlying the State's right-of-way, when Calais requested the State's permission to construct and maintain a roadway along Becharof Street.

■■■ Safeway contends that the State could not have accepted the dedication in the 1960s by including Becharof Street on the right-of-way map for the New Seward Highway, as the right-of-way map was not recorded until 1988. But the purpose of the recording statutes is to protect innocent purchasers against unrecorded deeds to third parties.[14] The only parties who could possibly have been prejudiced by the State's failure to record are Calais, which owns the land, and Safeway, which leased it. But Calais has had actual notice that Becharof Street lay within the right-of-way for the New Seward Highway since the 1960s. And Safeway did not enter into its long-term lease until 1996, well after the State's right-of-way map had been recorded. Any delay in recording the right-of-way map was thus harmless.

B. *Is the State Estopped from Claiming an Interest in Becharof Street?*

■■■ Even if the State's interest in Becharof Street was not vacated by the Municipality's action, Safeway argues that the State is equitably estopped from claiming an interest

in Becharof Street because Keith Morberg allegedly told Safeway that the State had accepted the Municipality's decision to vacate Becharof Street and would be willing to sell the now-isolated northwest corner of the (former) Calais property.

In *Dressel v. Weeks*, we held that when applied to preclude the assertion of title in real property, equitable estoppel requires:

> first, that the party making the admission by his declaration or conduct, was apprised of the true state of his own title; second, that he made the admission with the express intention to deceive, or with such careless and culpable negligence as to amount to constructive fraud; third, that the other party was not only destitute of all knowledge of the true state of the title, but of the means of acquiring such knowledge[;] and fourth, that he relied directly upon such admission, and will be injured by allowing its truth to be disproved.[15]

Safeway concedes that Morberg believed that the State's interest in Becharof Street had been vacated by the Municipality in 1983. But we have held that the Municipality's 1983 ordinance did not vacate the State's interest in the land. Because Morberg was not apprised of the true state of the State's title, the first element of the *Dressel* test is thus not met.

Nor is the third element. The State's title was derived from its inclusion of Becharof Street within the right-of-way for the New Seward Highway. Not only had the State's right-of-way map been recorded at the time that Safeway met with Morberg, but Calais, from whom Safeway was planning to lease the property, had actual notice that the street lay within the State's right-of-way. Safeway was thus not "destitute ... of the means of acquiring ... knowledge [of the

---

**12.** *State v. Fairbanks Lodge No. 1392*, 633 P.2d 1378, 1380 (Alaska 1981).

**13.** *See generally* Roger Cunningham et al., *The Law of Property* § 11.6 (2d ed. 1993) ("Much less formal behavior [than a formal resolution] can also constitute an acceptance: taking over of maintenance or construction of improvements, cessation of property taxation, or any other acts

indicating the government's assumption of control over the land.").

**14.** *See Gregor v. City of Fairbanks*, 599 P.2d 743, 745 n. 9 (Alaska 1979) (per curiam).

**15.** *Dressel v. Weeks*, 779 P.2d 324, 329 (Alaska 1989) (italics omitted) (quoting *Boggs v. Merced Mining Co.*, 14 Cal. 279, 367–68 (Cal.1859)).

true state of the title]." [16]  Because at least two of the four elements of the *Dressel* test have not been met, we conclude that equitable estoppel will not bar the State from claiming an interest in Becharof Street.

### C. *Does Quasi–Estoppel Bar the State from Asserting an Interest in Becharof Street?*

Safeway also asserts that the State is barred by quasi-estoppel from asserting an interest in Becharof Street. Quasi-estoppel "precludes a party from taking a position inconsistent with one he [or she] has previously taken where circumstances render assertion of the second position unconscionable." [17]  In applying the doctrine of quasi-estoppel, we consider

> whether the party asserting the inconsistent position has gained an advantage or produced some disadvantage through the first position; whether the inconsistency was of such significance as to make the present assertion unconscionable; and whether the first assertion was based upon a full knowledge of the facts. [18]

Before the Municipality passed its 1983 ordinance, the State asserted that it possessed a right-of-way over Becharof Street. That is the same position the State asserts today. Safeway contends that the State ultimately acquiesced to the Municipality's 1983 decision to vacate the street by failing to appeal the municipal ordinance effecting the vacation. But we see no reason to require the State to have appealed an ordinance that, as we have concluded, had no effect on the State's interests in the land in question. The State's position today is thus no different from what it was throughout the 1980s.

The State may have asserted a different position from the one it advances today in 1996, when Morberg indicated that the State would probably not claim an interest in Becharof Street and that the State would be willing to sell the northwest corner of the (former) Calais property. But Morberg did so under the false impression that the State's interest in Becharof Street had been lost when the Municipality vacated the street in 1983. His assertion was thus not based upon "full knowledge of the facts." [19]  If Safeway were to claim that Morberg had constructive knowledge of the State's claim of title, moreover, Safeway would be unable to show that it was harmed by Morberg's erroneous representation, as Safeway had the same constructive knowledge—through the recorded right-of-way map—of the State's claim to the land. [20]  Under the circumstances of this case, we decline to find the State's continued assertion of an interest in Becharof Street unconscionable.

### V.  *CONCLUSION*

For the reasons given above, we AFFIRM the superior court's decision.

CARPENETI, Justice, not participating.

---

16. *Id.*

17. *Keener v. State,* 889 P.2d 1063, 1067 (Alaska 1995) (quoting *Dressel v. Weeks,* 779 P.2d 324, 329 (Alaska 1989) (quoting *Jamison v. Consolidated Utils., Inc.,* 576 P.2d 97, 102 (Alaska 1978))).

18. *Keener,* 889 P.2d at 1067–68 (quoting *Jamison,* 576 P.2d at 103).

19. *Keener,* 889 P.2d at 1068.

20. *See id.* at 1068 (holding that party possessing same constructive knowledge as state could not have been disadvantaged by state's incorrect representation).

9/15/59

DEDICATION OF EASEMENT AND RIGHT-OF-WAY
MODERN ELECTRIC AND McCUTCHEON

ILLUSTRATION C

133

APPENDIX A

ILLUSTRATION G

APPENDIX B

344

STATE RIGHT-OF-WAY (IF BECHAROF VACATION EFFECTIVE)

ILLUSTRATION I

212

APPENDIX C